## KANSAS CITY, FT. S. & M. R. CO. v. MORGAN.

(Circuit Court of Appeals, Sixth Circuit. October 5, 1896.)

### No. 407.

1. JUDGMENT—CONCLUSIVENESS—INFANCY.
   An infant who sues by his next friend is as much bound by the judgment of a court having jurisdiction of the parties and subject-matter as if of full age.

2. SAME—COLLATERAL ATTACK.
   Plaintiff sued defendant for negligence which caused the loss of his leg. Defendant pleaded in bar a judgment obtained in favor of plaintiff for the identical cause in a former suit prosecuted by plaintiff's father as his next friend. Plaintiff replied that at the time the alleged judgment was obtained he was a minor; that his father, an illiterate man, agreed with defendant to accept $100 as full settlement for injuries to plaintiff; that the suit and judgment were simulated and pretended, being instituted by advice of defendant's counsel, and it was in fact no judgment. *Held*, that these allegations, even if conceded to be a legal fraud, could not be set up in a collateral attack upon the judgment.

3. SAME—FAITH AND CREDIT.
   The federal courts are bound to give the judgments of state courts the same faith and credit which the courts of another state are bound to give them. Pennoyer v. Neff, 95 U. S. 714, cited.

4. SAME—PAROL OR EXTRINSIC EVIDENCE TO CONTRADICT RECORD.
   Federal courts can determine whether or not a state court had jurisdiction of the parties to or subject-matter of a cause in which it has rendered

judgment, and for this purpose may look beyond the record and hear other evidence, but it cannot be shown by parol or extrinsic evidence that the subject-matter in the record was not that which was adjudicated.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

The plaintiff below, C. H. Morgan, sued the defendant below in the circuit court of Shelby county, Tenn., in March, 1895, for negligence which occurred in November, 1891, and which negligence is alleged to be the direct and proximate cause of an injury to the plaintiff, by reason of which his leg was amputated. The ‾neglect alleged upon the part of the railroad company was the failure to furnish a safe and suitable switch engine. The plaintiff, Morgan, was employed by the railroad company as a switchman in its yard at West Memphis, and it is alleged that the company furnished for work in said yard a defective and wholly unsuitable and unsafe switch engine, and one dangerous to the lives of its employés; that the engine had no brakes, its valves were leaky, and it was what is known in railroad parlance as a "bucker"; that it was unmanageable in the hands of a competent and skillful engineer, and entirely unsuited for the work of a switch engine, all of which was known to the railroad authorities and unknown to the plaintiff, Morgan; and that the unsuitableness of this engine was the cause of the injury. The case was removed from the circuit court of Shelby county to the circuit court of the United States, where the railroad company filed, among other pleas, the following: "(3) And the said Kansas City, Ft. Scott & Memphis Railroad Company, by Adams & Trimble, its attorneys, comes and defends the wrongs and injuries, when," etc., "and says that the said C. H. Morgan ought not to have or maintain his aforesaid action against the defendant, because it says that the said C. H. Morgan heretofore, to wit, at the January term, in the year 1893, in the circuit court of Shelby county, state of Tennessee, then being holden at the courthouse at Memphis, in said county, impleaded the Kansas City, Ft. Scott & Memphis Railroad Company in a certain plea of trespass, or trespass on‾ the case, to the damage of the said C. H. Morgan in the sum of five hundred dollars ($500), for the same identical acts of negligence in the said declaration mentioned, which said suit was prosecuted by the said C. H. Morgan, by his next friend, Sam H. Morgan. Such proceedings were then had in said court in that plea that afterwards, to wit, at the same term, said C. H. Morgan, by the consideration and judgment of said court, recovered in the said plea against the Kansas City, Ft. Scott & Memphis Railroad Company, for said acts of negligence specified in the declaration, $100, and for the costs of the suit the further sum of $8.35, whereof the said railroad company was convicted, as by the record and proceedings therein remaining in the said circuit court of Shelby county now appears, which court had jurisdiction of the subject-matter and of the parties. Thereafter the said Kansas City, Ft. Scott & Memphis Railroad Company paid to the clerk of the said circuit court of Shelby county the sum of $100 damages and $8.35 costs, in full satisfaction and discharge of the same, being authorized by the laws of the state of Tennessee to discharge said judgment in said manner. This defendant further says that this judgment was never appealed from, reversed, set aside, annulled, or in any manner modified, by any court whatever, all of which said railroad company is ready to verify by the record, and that the same is fully paid and satisfied, and that the said plaintiff, C. H. Morgan, has received the same. Wherefore it prays judgment if the said C. H. Morgan ought to have or maintain his said action against the said railroad company."

To this plea the plaintiff filed a replication as follows: "And, further replying herein, plaintiff says that heretofore, to wit, on the 6th day of November, 1891, he was injured in the manner set forth in his declaration. At the time of his injury he was ·still a minor, and did not attain his majority until the 1st day of November, 1894. And heretofore, prior to the 3d day of March, 1893, the plaintiff was still a minor, and legally incompetent to make and enter into any · valid contract not beneficial to himself. And prior to the day and date last aforesaid one Sam H. Morgan, the father of the plaintiff,

who was an honest laborer, but ignorant and illiterate, made and entered into a contract with the defendant to accept one hundred dollars as a settlement in full of all demands which plaintiff had and held against the defendant on account of the wrongs and injuries in plaintiff's declaration pleaded. Plaintiff charges that the said contract was made by the defendant through the agency of its attorneys, Adams & Trimble, a firm composed of E. F. Adams and C. H. Trimble, both of whom are lawyers of great ability and splendid attainments, and it was made on the part of Sam H. Morgan in person, and without the aid or advice of attorneys. And the said attorneys of the defendant, realizing that the said Sam H. Morgan could not by the contract aforesaid legally bind this plaintiff, then a minor, and desiring zealously and faithfully to represent the interests of their clients, on the 6th day of March, 1893, advised and procured the said Sam H. Morgan to file a suit in the circuit court of Shelby county, Tennessee, against the defendant, in the name of Chas. H. Morgan, by next friend, Sam H. Morgan, which said suit was No. 6,025 on the docket of said court, for the sum of five hundred dollars, on account of the same wrongs and injuries alleged in plaintiff's declaration, with the design and understanding at and prior to the institution of said No. 6,025 that the judgment therein to be rendered should be for the sum of one hundred dollars. Plaintiff charges that there was no real controversy between the parties to said cause No. 6,025, but it was their purpose and intent to render that contract valid by a simulated and pretended judgment, which they knew to be in law fraudulent and void. And on the same day, to wit, the 6th of March, 1893, S. H. Morgan and Adams & Trimble caused a summons to be issued in said cause No. 6,025 without having first given security for the costs; and on the same day, to wit, the 6th of March, 1893, the defendant, by its attorney, C. H. Trimble, acknowledged service of said summons; and on the same day, to wit, the 6th of March, 1893, in pursuance of the said purpose and intent, they filed and caused to be filed the declaration in said cause; and on the same day, to wit, the 6th of March, 1893, they filed the defendant's plea of general issue in said cause; and on the same day, to wit, the 6th of March, 1893, they appeared before the honorable circuit court of Shelby county, Tennessee, and by consent took a judgment for the plaintiff for one hundred dollars; and on the same day, to wit, the 6th of March, 1893, they caused to be entered a judgment for the plaintiff for one hundred dollars. All of which said summons, declaration, pleas, and judgment will be exhibited to the court on the trial hereof. Plaintiff alleges that W. B. Edrington, Esq., signed the declaration as attorney for the plaintiff in said cause, but he signed the same as a mere matter of form, and as an accommodation to Messrs. Adams & Trimble, with the understanding that the amount of the judgment to be rendered had been already settled and agreed upon. Wherefore plaintiff prays that that which defendant pleads in bar of his right to a recovery herein, notwithstanding the same appears to be the judgment of a court, is in truth and in fact no judgment, but was an unauthorized use of the court for the purpose of giving color of validity to a contract known by them to be void. Plaintiff says that he does not charge, and does not wish to be understood as charging, that Messrs. Adams & Trimble and Edrington, who are reputable and honorable attorneys of this court, were in the matters alleged acting corruptly, or were guilty of immoral fraud, but simply insists that the said acts constitute legal fraud; that, there being no real adversaries and no real controversy before the court, the pretended judgment is a nullity and void."

To this replication the railroad company filed a demurrer, and this demurrer, upon hearing, was overruled by the court. The demurrer having been overruled, there was a traverse and joinder of issues, and the cause was heard before a jury, and a judgment rendered in favor of the plaintiff for the sum of $2,500. In addition to the general verdict the jury found specially that the engine furnished by the railroad company and used when the accident occurred "was defective (1) in being too light for the work required; (2) in having neither steam, air, nor vacuum brakes, and (3) that the valves must have been defective in order for her to have received steam, producing the action which caused the accident." It appeared on the trial of the issues that the engine was a light engine, and not the one that was usually used, but

'one that was an extra one in the yard, and used in ·case of emergency; that it had no brake, nor had it relief valves, and the throttle valve was somewhat 'leaky. The court refused the request of the railroad company to direct the jury to return a verdict for it, and left it to the jury whether or not the engine thus used, without the brake and without relief valves, was reasonably safe. to be thus used, and whether or not in fact these defects in the engine were the proximate cause of the injury to plaintiff. The defendant, as part of its evidence, filed a copy of the declaration, orders, and judgment in the state court, pleaded as a bar, which judgment is as follows:

"And on, to wit, March 6, 1893, March term, 1893:

"Charles H. Morgan, by Next Friend, Sam H. Morgan, v. The Kansas City, Ft. Scott & Memphis Railroad. Co.

"Judgment.

·"This cause having come on this day to be heard before the court sitting as a jury, and the plaintiff appearing in person and by W. B. Edrington, Esq., his attorney, and the defendant by Adams & Trimble, its attorneys, and the court having heard the evidence of the plaintiff and others, finds the issues joined in favor of the plaintiff, and assesses his damages at the sum of one hundred ·dollars. . It is therefore ordered, adjudged, and decreed that the plaintiff have and recover of the defendant, the Kansas City, Ft. Scott & Memphis Railroad Company, the sum of one hundred dollars, together with all his costs in this behalf expended, for which execution will issue.

"Received of John A. Strehl, clerk, one hundred dollars, in full of this judgment. March 6, 1893.

"Judgment 6th. day of March, 1893.

"Sam H. Morgan, Guardian."

This judgment for $100, which had been paid to the clerk of the court, was paid over to the father of the plaintiff, who had been on that day appointed his guardian. The court, notwithstanding the objection of the defendant, allowed oral testimony to be heard on behalf of the plaintiff to show what had occurred previously to the filing of this suit, and at the time of the rendition of the judgment. The evidence introduced by the parties proved that the father of the plaintiff, with his consent, had previously to the filing of the suit agreed with the railroad authorities to accept $100 in full discharge of all claims for damages for the negligence and injury sued for herein, and that in pursuance of that agreement the suit was filed, summons issued and served, and the general issue entered, and the case brought before the Shelby circuit court for hearing. Both plaintiff and his father were present in said court when the case was brought before the court, and plaintiff testified before the court. He told the court his age and his injury, and that he was .willing to accept $100. It appears that his father also testified, but no evidence was offered by either party upon the question of negligence. or how the accident happened, but the judgment for $100 was entered by the court, as both parties assented thereto, without special inquiry by the court as to how the accident occurred.

The circuit judge, in his charge to the jury upon this point, charged them thus: "The railroad company first says that it ought not be compelled to pay, because the question of its liability has been settled in another court, in another suit brought by this young man, through his next friend, in which one hundred dollars was given as the judgment, which judgment has been satisfied by the payment of the money to his guardian. With reference to that defense it has seemed to me, following Judge Hammond, who ruled upon the demurrer and previous pleadings in the case, that the circumstances under which the judgment was admittedly rendered made it a mere cloak for an agreement to pay one hundred dollars in full satisfaction of the damages suffered. If that agreement had been made with a man who had attained his majority, without fraud, he would be bound by it; but it is conceded that at the time that agreement was made this young man was an infant, as we say in law,—that is, he had not attained 21 years of age,—and he was unable to bind· himself by such an agreement. It is true that he had a guardian appointed, and that 'the guardian received the money, but, in Judge Hammond's view of the law, and in my own, before such a judgment could be binding its reasonableness on be-

half of the infant must have been submitted to a court having competent jurisdiction to give authority for such a settlement; and the court in which this case was tried was a court of law, and not a court of chancery, which latter court is the court which might have properly passed on the reasonableness of the settlement and made it binding. As that court did not pass on the judgment rendered, such judgment cannot be regarded as a bar to this suit, on the admitted facts of the case, and I therefore charge you that you need not regard that defense."

There was a motion for a new trial, which was overruled upon condition that the parties give credit for the $100 received on the judgment aforesaid, with the interest accrued thereon, which was done.

E. F. Adams and C. H. Trimble (Wallace Pratt, of counsel), for plaintiff in error.

John E. Bell, for defendant in error.

Before LURTON, Circuit Judge, and BARR and SEVERENS, District Judges.

BARR, District Judge, after stating the facts, delivered the opinion of the court.

The appellant has assigned several errors in addition to those which raise the question of whether or not the judgment entered by the circuit court of Shelby county, Tenn., in March, 1893, is a bar to the present action; but, as that question is the decisive one, we will not consider the other errors assigned. That judgment was rendered by a court of general jurisdiction, and as such is conclusive upon the plaintiff, who was a party thereto, unless it can be collaterally impeached. The parties and the cause of action in that suit are identical with the cause of action set up in the present suit, if we look alone to the declarations of the plaintiff in each case, and the issues made thereon. The reply of the plaintiff in this action, which was demurred to and which demurrer was overruled, is a collateral, and not a direct, attack upon the judgment of March, 1893. It is true that the plaintiff was at that time an infant under the age of 21 years, and sued by his next friend, who was his father; but does the fact of his infancy make that judgment any the less binding and conclusive, if the court rendering it had jurisdiction of the parties and of the subject-matter? The infancy of the plaintiff did not suspend his right of action for the injury caused him by the alleged negligence of the railroad company until he became of age or had a guardian appointed. On the contrary, he had the right to sue at any time by his next friend, in a court having jurisdiction thereof. Green v. Harrison, 3 Sneed. 131; Miles v. Kaigler, 10 Yerg. 10. But the next friend brings such suit with the implied consent of the court, and under its supervision. In Kingsbury v. Buckner, 134 U. S. 673, 10 Sup. Ct. 646, the supreme court, by Justice Harlan, said:

"The infant, by his prochein ami, having prosecuted an appeal to the supreme court of Illinois from the original decree rendered in the suit brought by him, and having appeared by guardian ad litem to the appeal of Buckner and wife, is as much bound by the action of that court, in respect to mere errors of law, not involving jurisdiction, as if he had been an adult when the appeal was taken. In Gregory v. Molesworth, 3 Atk. 626, Lord Hardwicke said that 'it is right to follow the rule of law, where it is held an infant is as much bound by a judgment in his own action, as if of full age; and this is general, unless gross laches or fraud or collusion appear in the prochein ami;

then the infant might open it by a new bill.' So in Lord Brook v. Lord Hertford, 2 P. Wms. 518, 519: 'An infant, when plaintiff, is as much bound and as little privileged as one of full age.' See, also, Brown v. Armistead, 6 Rand. 594; Jameson v. Moseley, 4 T. B. Mon. 414; Hanna v. Spott's Heirs, 5 B. Mon. 362."

See Corker v. Jones, 110 U. S. 318, 4 Sup. Ct. 19, and Colt v. Colt, 111 U. S. 566, 4 Sup. Ct. 553.

In the case of Corker v. Jones, Jones was the guardian of Corker, and as such purchased a tract of land for $15,000, payable in Confederate money, which was advanced by Jones, the guardian, out of his own funds. The conveyance was made to him as guardian of Corker, and Corker was charged with it in the guardian's account, as an advancement. Subsequently, while Corker was still an infant, about 11 years of age, a bill in equity was filed in the superior court of Burke county, Ga., in the name of Corker, by his mother and next friend, against Jones, praying for the rescission of the transaction between the guardian and ward, and that the guardian should take back the land, and the ward be relieved from the payment of the consideration. This relief was granted by the court. Subsequently, after the ward became of age, he sued to have this judgment canceled and set aside. The supreme court refused to set the judgment aside. In that case it was claimed that the decree was voidable because taken against an infant without the protection of a guardian ad litem. The court said on this point:

"If the infant had been defendant the objection could only be taken by appeal or bill of review, and not collaterally. But the infant was plaintiff, and sued by his next friend, which was proper, and there is no more ground for saying that the decree was against the infant than in his favor. He was relieved from the burden of the purchase, which was the object of the suit."

The allegations of the plaintiff's replication, which were taken to be true on demurrer, do not make out a case of actual fraud, in that there is no deceit practiced or misrepresentations made by the defendant or its representative to the plaintiff or to his next friend, nor were they in any way overreached. It is alleged in effect that there had been an agreed settlement between the infant and his father, on the one side, and the railroad company on the other, and that suit was instituted, and issue made and submitted to the circuit court of Shelby county, Tenn., and judgment entered by that court by consent, and that this was done by the defendant's attorneys for the purpose of making legal and valid a settlement which had been previously made between the parties, and which was invalid because of the infancy of the plaintiff, and the want of authority of his father to make such a settlement. This is alleged in the plea to be a legal fraud, and that in fact there was no real controversy and no real litigation, hence the pretended judgment was invalid and void. These allegations contradict the record of the proceedings and the judgment which was entered in the circuit court of Shelby county. If it be conceded that these facts, as alleged and as subsequently proven, would be a legal fraud, it is not such as can be set up in a collateral attack upon the judgment. Indeed, if set up in a direct proceeding, by bill in equity to set aside the judgment, the court

would only grant the relief upon being satisfied that the judgment which had been rendered was against the interest of the infant.    See Corker v. Jones, supra.    In such a case an original bill in equity should be filed to set aside the judgment or decree.    Story, Eq. Pl. §§ 427, 428.    If the replication be considered as alleging fraud in the obtention of the judgment of the circuit court of Shelby county, it is decided by the supreme court of the United States that this cannot be done in a collateral proceeding, but must be done in a direct proceeding.    In the case of Christmas v. Russell, 5 Wall. 304, which was a suit by Russell against Christmas, a citizen and resident of Mississippi, on a judgment rendered in the state of Kentucky, Christmas pleaded that the judgment set forth was obtained and procured by the plaintiff by fraud.    The plea was demurred to and the demurrer sustained, and that judgment affirmed in the supreme court. Justice Clifford, who delivered the opinion, referred to many decisions in the state courts to sustain this view, and in the course of the opinion said:

"Domestic judgments, under the rule of the common law, could not be collaterally impeached or called in question if rendered in a court of competent jurisdiction. It could only be done by writ of error, petition for a new trial, or bill in chancery. Third persons only, says Saunders, could set up the defense of fraud or collusion, and not the parties to the record, whose only relief was in equity, except in the case of a judgment obtained on a cognovit or warrant of attorney."

This decision was again approved in Michaels v. Post, 21 Wall. 426, and Maxwell v. Stewart, 22 Wall. 77.    In the recent case of Hilton v. Guyot, 159 U. S. 185, 16 Sup. Ct. 151, the court, in reviewing the cases decided by the supreme court, said:

"In Hanley v. Donoghue (1885) 116 U. S. 1, 4, 6 Sup. Ct. 242, 244, and in Wisconsin v. Pelican Ins. Co. (1888) 127 U. S. 265, 292, 8 Sup. Ct. 1370, 1375, it was held that judgments recovered in one state of the Union, when proved in the courts of another, differed from judgments recovered in a foreign country in no other respect than in not being re-examinable on their merits, nor impeachable for fraud in obtaining them, if rendered by a court having jurisdiction of the cause and of the parties."

This would clearly indicate that judgments of another state are not impeachable for fraud in obtaining them, in a collateral proceeding, which was then being discussed by the court in a suit brought upon a foreign judgment.

Freem. Judgm. § 132, says, "Fraud in procuring a judgment cannot be shown by the parties to such judgment in a collateral proceeding;" referring to many authorities.    Black, Judgm. § 290, says, "In a majority of the states the rule is well settled that it is not permissible for a party or privy to attack a judgment in a collateral proceeding on account of fraud."

We think it is a well-settled rule in the federal courts that a judgment rendered in another state cannot be impeached in a collateral proceeding for fraud in obtaining it.    The cases of Welch v. Mandeville, 1 Wheat. 235, and Lord v. Veazie, 8 How. 254, are not in conflict with this view.    Welch v. Mandeville is a case in which suit was brought on an action of covenant in the name of the original payee, Welch, for the benefit of his assignee, Prior, who was the

equitable assignee, against Mandeville and Jameson. In that suit they pleaded that Welch, in a former suit in the same court, and between the same parties, for the same debt, had come into court and acknowledged that he (Welch) would no further prosecute said suit, and thence altogether withdrew. himself. The entry which was thus made in the former suit upon the same obligation, which was claimed as a bar to the second action, was, "This suit is dismissed, agreed," and was made by the clerk without the order of the court. The court below held the plea a good one, and the supreme court reversed it, saying among other things:

"Admitting the dismissal of a suit by agreement to be a good bar to a subsequent suit (on which we give no opinion), it can only be so when it is bona fide, and not for the purpose of defeating the rights of third parties. It would be strange, indeed, if a party could be allowed, under the protection of its forms, to defeat the whole purpose and object of the law itself."

Thus, it is seen that there was no judgment of the court, but only an entry by the clerk, and that Prior was really not a party to the suit in which that entry was made, although the suit had been brought for his benefit. Lord v. Veazie was a case in the supreme court on writ of error. It there appeared to the satisfaction of the court that the alleged controversy between the two parties before the court was not a real controversy, but one gotten up between them to injuriously affect the interest of a third party; and, this being the case, at the instance of a third party, not before the court, the court dismissed the writ of error, and also ordered the original judgment set aside. In that case the court considered that they were being imposed upon by nominal litigants, to the injury of a third party not before the court, and, having jurisdiction of the case by writ of error, disposed of it. There was no adjudication of the rights as between even the original parties, only the case was dismissed.

In Tennessee the courts seem to have decided when judgments rendered in another state, and sued on in that state, can be impeached for fraud, by answer or plea, in such a suit (Coffee v. Neely, 2 Heisk. 304; Turley v. Taylor, 6 Baxt. 376), but deny the right to impeach domestic judgments for fraud in obtaining them by collateral proceeding, and require such judgments to be set aside by direct proceedings. Thus, in Conway v. Brown, 5 Heisk. 237, which was a bill in equity to enforce a judgment at law and to foreclose a mortgage, it was contended that the court had no jurisdiction, and the court said:

"The record imports absolute verity, and cannot be disputed except by showing, in a proceeding for that purpose, that the judgment was procured by the fraud of the plaintiff therein."

So in the case of Walker v. Day, 8 Baxt. 77, in considering a suit in which a decree had been attempted to be impeached by a collateral proceeding, the court said:

"If the decree had no foundation in truth, but was predicated of a proceeding false in all of its parts and false in every particular, but upon its face substantial, the rule is the same; and, before a party can avail himself of such objections existing in extraneous facts, he must invoke the powers of a

court of chancery to declare it void. This must be done by a direct proceeding to vacate, * * * and in a suit for that especial purpose."

See, also, Kelley v. Mize, 3 Sneed, 59.

As this case, though removed from the state court, was in the federal court when the judgment of the Shelby county circuit court was pleaded, it is to be regarded as the judgment of another state. In Pennoyer v. Neff, 95 U. S. 714, in speaking of a judgment which had been rendered in the circuit court of the state of Oregon, which had been pleaded to sustain the title of the defendant in an ejectment suit, the court said:

"Whilst they [the federal courts] are not foreign tribunals, in their relations to the state courts, they are tribunals of a different sovereignty, exercising a distinct and independent jurisdiction, and are bound to give the judgments of the state courts only the same faith and credit which the courts of another state are bound to give to them."

The difference between law and equity has been distinctly recognized and adhered to in the federal courts; hence, if the remedy be in equity, federal courts will not allow it to be asserted at law, and vice versa.

The next inquiry is whether the replication of the plaintiff is good as an impeachment of the judgment of the circuit court of Shelby county for want of jurisdiction of the subject-matter which was adjudged. The language of this replication does not in terms raise the question of jurisdiction, but rather assumes that the court had jurisdiction of the subject-matter as alleged in the declaration, but did not in fact or in law adjudicate upon that subject, but upon another and different subject-matter. The circuit court admitted parol evidence, seemingly on the theory that this replication did raise the question of the jurisdiction of the Shelby circuit court over the subject-matter in which the judgment was entered, and that it was beyond the jurisdiction of a common-law court by a judgment to approve a previous agreement made by the parties to the suit, which was invalid by reason of the infancy of one of the parties, and want of authority in his next friend, and that such an order could only be made by a court of chancery. The Tennessee statutes provide (section 5042):

"The chancery court shall have concurrent jurisdiction with the county court of the persons and estates of infants and the appointment and removal of guardians."

And also in section 5043:

"It shall have and exercise concurrent jurisdiction with the circuit courts of all civil actions triable at law except actions for injuries to person, property or character involving unliquidated damages."

It may be doubted, if the judgment be considered as merely one by consent, that it was beyond the power of that court, who, under the statute, had the exclusive jurisdiction of suits for the recovery for injuries to the person, and was a court of general jurisdiction. The Massachusetts supreme court refused to allow a compromise agreement made out of court with an infant through a next friend to be pleaded against that infant in a suit brought for the same personal injury, but, in the opinion of the court, strongly indicated that

a compromise judgment entered by a court at the instance of the next friend would have been a bar to such an action. Tripp v. Gifford (Mass.) 29 N. E. 208. In Longnecker v. Greenwade, 5 Dana, 516, the Kentucky court sustained a judgment which dismissed a slander suit at the instance of the infant and her father, although the next friend of the infant objected to such judgment, and appealed to the court of appeals therefrom.

But conceding that the court, by reason of its exclusive jurisdiction over injuries to persons, had no right to enter a judgment by consent in satisfaction for such injuries, and that it could only be done in a court of equity, it does not follow that the want of jurisdiction in that court can be shown by extrinsic evidence, and the record contradicted, in a collateral proceeding. It is now settled that federal courts can determine whether or not the court who renders a judgment in another state has jurisdiction of the parties or of the subject-matter (see Thompson v. Whitman, 18 Wall. 457; Knowles v. Coke Co., 19 Wall. 60), and, in ascertaining whether or not the party against whom the judgment is rendered is before the court, will look beyond the record itself, and hear other evidence (Shelton v. Tiffin, 6 How. 162). In that case the court allowed evidence to be received that the attorney who had entered the appearance of the party against whom the judgment had been rendered had no authority. It may also be shown that the subject-matter, as it appears from the record, was beyond the jurisdiction of the court who rendered the judgment; but it cannot be shown by parol or extrinsic evidence that the subject-matter in the record was not that which was adjudicated, but something else, and that the subject-matter which was adjudicated was beyond the jurisdiction of the court. If this were allowed, then the distinction between a direct and collateral attack upon a judgment would be ignored, and the verity of the record in which a court of general jurisdiction had entered a judgment destroyed. If parol or extrinsic evidence can be introduced for such a purpose as this, we cannot well imagine a case in which it could not be pleaded and introduced in a collateral attack upon a judgment. The language of the supreme court, especially in the case of Thompson v. Whitman, is very broad in regard to the right to impeach a judgment because of the want of jurisdiction both of the parties and the subject-matter; but that case only goes to the extent of deciding that the New Jersey court, which had condemned the sloop Whitman and her cargo for violation of the New Jersey statutes, had no jurisdiction of the schooner seized and condemned, because there had been no seizure within the county of Monmouth, and under the statute, unless there was such a seizure, the court had no jurisdiction of the res. All of the cases in the supreme court which have allowed the jurisdiction of a state court to be impeached collaterally for want of jurisdiction, and the record contradicted by extraneous evidence, have been confined to the question of jurisdiction over the parties; and we know of no case, and none has been cited, which goes to the extent of allowing parol or extrinsic evidence to contradict the record in which the judgment was rendered, and show a different subject-matter than that made out by

that record, for the purpose of showing that the court had no jurisdiction. Here the parties were before the court, and it must be conceded that the court had jurisdiction of the subject-matter, as presented by the pleadings and as adjudicated upon. The question of jurisdiction, if it can arise at all, is upon a state of facts which can be presented only by parol and extraneous evidence, and this we think cannot be done in a collateral attack upon a judgment. If this could be done, it would, in a large measure, destroy the conclusiveness of judgments, and the distinction between a collateral and a direct attack upon a judgment rendered by a court of general jurisdiction. We conclude that the court erred in overruling the demurrer to the replication filed by the plaintiff to the defendant's plea in bar, and erred in allowing parol evidence to sustain said plea. The judgment must therefore be reversed, and a new trial awarded, and for such further proceedings in conformity to the opinion herein.