# WHEELING.

## Neely v. Bee.

Submitted June 13, 1889.—Decided June 27, 1889.

1. Promissory Notes—Sureties—Contribution.

Where a joint and several promissory note was executed by D. as principal and B, N, & P., as sureties payable to G., and N. pays a portion of said note after judgment has been rendered against him alone thereon, if such payment was made by N., when he was indebted to D., the principal, in an amount sufficient to pay the judgment so obtained against him, or if after the maturity of said note said N. had in his possession or under his control money belonging to said D. sufficient to pay off said note or judgment and did not so apply it but paid it back to said D., said N. is not entitled to contribution from his co-sureties, even if he afterward paid said note or judgment out of his own money.

2. Promissory Notes—Sureties—Contribution.

A surety is entitled to the benefit of any indemnity or security held by his co-surety; and if the co-surety has it in his power to pay off and discharge the indebtedness, for which they are jointly liable out of money or other thing belonging to the principal, and fails to do so, he can not call upon his co-surety for contribution.

*Stuart & Farr* for appellents.

*J. V. Blair* for appellee.

English, Judge;

This was a suit in equity, brought by one Floyd Neely in the Circuit Court of Doddridge county against John Donahue, Ephraim Bee, L. W. Pearcy, administrator of the estate of Joshua Pearcy, deceased, M. Donahue, and the Grafton Bank. It seems, that John Donahue, Epraim Bee, Floyd Neely, and Joshua Pearcy, on the 24th day of August, 1878, executed their joint and several promissory note, payable to the Grafton Bank, at Grafton, West Virginia, or order 120 days after date for the sum of $400.00. Upon this note an action of debt was brought in the County Court of Taylor county against the parties, who executed said note, but process was executed upon said Floyd Neely alone, and judg-

ment was rendered by said court on the 20th day of May, 1879, against said Floyd Neely alone for the sum of $410.00 with interest from that date, and costs. An execution was issued on said judgment directed to the sheriff of Doddridge county, which appears to have been levied upon four head of horses, the property of said Floyd Neely, and a forthcoming bond was executed by Neely with M. Donahue, John Donahue, and Joshua Pearcy as his sureties. On the 4th day of March, 1879, a credit of $100.00 was indorsed upon said execution, and on the 25th day April, 1881, a judgment was rendered upon said forthcoming bond against the obligors therein for the sum of $369.14 with interest thereon from the 5th day of March, 1881, and on the 9th day of July, 1883, said Floyd Neely paid upon said judgment the sum of $383.45; and said action of debt seems to have been dismissed on the first Monday in December, 1884, by plaintiff's attorney as to the defendants J. Donahue, Bee, and Pearcy, who were never served with process therein.

The plaintiff in his said bill alleges, that by reason of his having been the surety of said John Donahue, and the co-surety of Epraim Bee and Joshua Pearcy he has been forced and compelled by due process of law to pay said sum of $383.45 to the sheriff on said debt; that neither said Bee nor Pearcy paid any portion of said debt, and he never has been reimbursed in whole or in part for the money paid by him as aforesaid; that the residue of said debt was collected of said Donahue, that being all that could be made or collected of him; that said principal was then and has been ever since totally insolvent, and that said Bee and Pearcy are the only persons, to whom he can look for contribution; and he prays, that they be compelled to contribute their just and equal proportion of said money so paid by plaintiff Neely.

The defendant Bee answered said bill admitting the execution of said note but says, he signed it at the special instance and request of said Neely, who agreed to hold and save said Bee harmless therefrom; and said Bee claimed that the said Neely, having executed said forthcoming bond and having allowed the same to be forfeited, and having permitted the judgment thereon, released and exempted him from any liability on the original note for the amount of the

same or any part thereof. Said Bee also alleged in his answer, that at the date of said note, and after the same became due, and until suit was brought thereon, and till and at the time of the payment of the debt and judgment by said Floyd Neely, the said Neely had moneys and property and funds in his possession and under his control belonging to the defendant, John Donahue, and could have paid said note; which money, funds and property he paid over to said John Donahue in person instead of applying the same to the payment of said note and the judgment thereon, which he could and should have discharged and paid with said money, funds and property of said Donahue; and that the money, funds and property with which said Neely paid said judgment was the property of the said John Donahue, who was principal in said note.

The administrator and heirs also answered said bill claiming, that said Floyd Neely did not pay said debt with funds of his own but with money belonging to said J. Donahue, and that, after said note fell due, said Neely had in his possession money and property of said John Donahue, with which he might and could have paid said debt; and that said Neely and John Donahue colluded together to defraud the other sureties on said note out of the money now sought to be obtained by way of contribution from the other sureties; that said administrator settled the estate of his intestate and in doing so published notice for creditors to bring forward their claims, of which said Neely had notice but failed to bring forward any claim or make any demand for payment.

Several depositions were taken in the cause, bearing upon the time and manner of the execution of said promissory note and the *status* of accounts between the plaintiff, Floyd Neely, and John Donahue, the principal in said note, at the time the same was executed; and on the 2d day of August, 1886, a decree was entered therein ascertaining, that the plaintiff had been compelled by due process of law to pay $383.45 to the Grafton Bank on said promissory note, and that he was entitled to call upon the defendant Ephraim Bee and the estate of Joshua Pearcy, deceased, to contribute the one third part thereof, and directing a commissioner of the

court to calculate and state the proportionate share, which the said Bee and the Pearcy estate should pay, and such other matters, as he might deem pertinent, or as might be required of him by said parties.

Upon a questson raised by the answer of the appellant, Ephraim Bee, as to inducements held out by him by said Floyd Neely to become a party to said note, and representations and promises, that he should lose nothing by so doing, and that, if said Donahue failed to pay said note when due, he (Neely) would hold said Bee harmless, this was an affirmative allegation made by said Bee by way of defense, and the burden of proof was upon him; but upon examining the testimony it is found, that, while said Bee swears positively, that these promises and representations were made to him by said Neely to induce him to sign said note, the said Neely in his deposition is just as positive, that no such promises ever were made; and so, if the parties are to be regarded as equally worthy of belief, Bee fails to prove his allegation.

As to the allegation in the appellant Bee's answer, that the plaintiff, Floyd Neely, had moneys and property and funds in his possession and under his control belonging to the defendant, John Donahue, out of which he might and ought and could have paid said note, which money, funds and property he paid over to Donahue instead of applying it to the payment of the note and the judgment thereon, the questions of fact raised by said allegation were referred to a commissioner, and a large number of witnesses were examined as to the *status* of accounts between Neely, and Donahue subsequent to the execution of the note, which bears date August 24, 1878, and was made payable 120 days after date with interest; and the effort seems to have been made by Neely to show a balance in his favor, at the time he paid the sum of $383.45 on the judgment, which was the balance remaining unpaid thereon after crediting about $100.00 realized out of the sale of some property belonging to Donahue, and which amount was paid by Neely on the 9th day of July, 1883.

The commissioner seems to have returned several reports and supplemental reports. In his supplemental report dated

December 4, 1886, he finds a balance due Neely from Dona-
hue of $793.07. In his report, dated July 18, 1887, he
finds the balance in favor of Neely due from Donahue to
have been on the 9th of July, 1883, $476.05.

To these reports exceptions have been filed by the appel-
lant and also by the personal représentative of his co-surety
Joshua Pearcy. In regard to the items of account presented
by the parties before the commissioner it is very diffi-
cult to ascertain, what portion of them ought to have been
allowed or rejected. In his report dated July, 1887, he says:
"It is very hard for your commissioner to pass upon them,"
[meaning these items] "as to the preponderance of testi-
mony," etc. It however appears, that Donahue was sheriff
of the county of Doddridge from January 1, 1877, to De-
cember 31, 1880; that this note was executed on the 24th
day of August, 1878, payable 120 days after date; that very
intimate relations existed between Donahue and Neely
during that period and afterwards; and when said Donahue,
in giving his deposition, was asked the question: "Did you,
during the time beginning January 1, 1887, and ending
December 31, 1888, while you were sheriff of Doddridge
county, furnish to Floyd Neely personally, or to Floyd Neely
and Luther Martin, under the firm name of Neely &
Martin, or to Floyd Neely, for use of the boom com-
pany at Grafton, any sum or sums of money or other
securities?" he answered: "The firm of Neely & Martin
didn't get any from me. I loaned Col. Neely some. I
didn't furnish any to the boom-company"—and he files
with his deposition a statement marked "X," showing the
amounts he let Neely have during that time; and by refer-
ence to said exhibits we find that Donahue, during the time
he was sheriff, loaned Neely at different times $1,424.86, and
from that time until March, 1883, he loaned him $342.14
more; but taking the statement X, filed by Donahue, of his
account against Neely, and the statement A. filed by Neely,
of his account against Donahue we find, that between Jan-
uary, 1887, and January, 1883, there was a balance in favor
of Donahue of $481.26, and the greater part of said balance
accrued after the maturity of said note. Again Donahue in
giving his testimony was asked, "During the time you were

sheriff of Doddridge county after the date of that note, and since you were sheriff up to the present time, has Floyd Neely been indebted to you in any sum?" and he answered, "I couldn't tell how it would be, because we have had no settlement. He got some money from me, but we have had no settlement. He gave me a good deal of orders. He asked me if they were not as good as the money to me, and I told him they were." "Did he give you that good deal of orders since the execution of that note?" *Answer.* "I could not tell, whether it was before or since. He was giving them to me along, I suppose,—some before and some after.

Although there were other accounts existing between said Donahue and Neely both before and subsequent to the time he was sheriff of said county, yet the state of accounts during that period is most material; for said note was executed August 24, 1878, and fell due in December, 1878, and said Neely allowed suit to be brought against him on said note, and process according to the statement of his bill was served upon him on the 13th day of February, 1879, and judgment was rendered against him on the 20th day of May, 1879, for $410.00; and according to said Donahue's statement he loaned said Neely in cash subsequent to that time over $500.00. This money Neely claims, that he paid back to Donahue in county orders, state claims, *etc.*, and if he did so, it was with full knowledge of the claim, on which suit had been instituted against him and his co-sureties, part of which he claims was paid after said judgment was rendered. But with money in his own hands sufficient to have paid off and discharged said note, before it was sued upon, he allowed costs to be added and a judgment to be rendered and the expense of a forth-coming bond to be added and invested the money he has received from said Donahue in county orders and State-claims, and turned them over to him, instead of discharging this note, for which he and his co-sureties were liable as the security of said Donahue. Would it be equitable under the circumstances developed by the evidence in this cause, to allow said Neely to compel his co-sureties to contribute any portion of the amount so paid by said Neely on said judgment?

Something has been said about the question of jurisdiction

in cases of this character. We regard it as well settled, that equity will take jurisdiction in a suit brought by one surety against his co-sureties to compel contribution. In Barton's Chancery Practice volume 1, p. 216, § 72 we find it said: "To avoid multiplicity of suits, and in order that in one proceeding there may be contibution among the parties, the sureties as well as the principal debtors should be made parties," *etc.*, to a suit in equity of this character.

Returning then to the question whether equity would allow Neely under the circumstances of this case to compel contribution from his co-sureties, in the case of *Currier* v. *Fellows*, 27 N. H. 366, we find the court holds, that a surety is entitled to the benefit of any security held by his co-surety; and in Brandt, Sur. § 238, p. 334, we find that "it has also been held, that the surety who has partial indemnity in his hands in the shape of property of the principal can only recover from a co-surety one half the amount paid by him after deducting therefrom the value of the property." Of course if said co-surety has in his hands sufficient property or money to wholly indemnify him, he can recover nothing from his co-sureties.

The view that I take of this case renders it unnecessary to pass upon the questions raised in argument as to the effect of the execution of the forth coming bond by Neely; but I will say, that such a bond executed by a surety, in which the principal debtor does not join, would not have the effect of releasing a co-surety who was no party to said bond. I am however of opinion, that the facts disclosed in this case as to the intimate business relations existing between Donahue and Neely, and as to the large amounts of money passing between them at or near the very time suit upon said note was being pressed, show conclusively, that Neely had it in his power to pay off and discharge said note on more than one occasion with money in his hands belonging to Donahue, and that it would be inequitable under the circumstances to allow Neely to enforce his claim for contribution against his co-sureties.

The decree rendered in this cause on the 6th day of September, 1887, must be reversed, and the plaintiff's bill dismissed with costs to the appellant, Ephraim Bee.

DISMISSED.