# WHEELING.

## TURNER v. STEWART.

Submitted January 20, 1902. Decided June 7, 1902.

1. JUDGMENT OR DECREE—*Conclusive—How Impeached.*

A judgment or decree for a debt in favor of A against B is conclusive, both between the parties and as to strangers, of the existence, justness and amount of the debt, and can be impeached by a party or a stranger only for fraud or collusion. It can be impeached therefor, not collaterally, but only by a direct proceeding to set it aside by original bill or cross bill or answer. (p. 497).

2. SURETY'S RIGHT TO RELEASE—*Personal.*

The right of a surety to be discharged in equity by extension of time given by the creditor is personal to the surety, and cannot be used by another creditor of such debtor. (p. 499).

3. ARBITRATION—*Award—Revocable Only by Court.*

A submission to arbitration of an existing controversy entered in court, or by agreement out of court providing that the award shall be entered as the judgment or decree of the court, is not revocable, except by the court, and will bar a suit upon the demand submitted. But a provision in a contract that any future controversy under it shall be arbitrated will not prevent an action. (p. 499).

4. BILL—*General Demurrer—Reversible Error.*

Where a bill in equity contains some matter proper for relief, and some matter not calling for relief, a general demurrer is not proper, and there is no error in overruling it. The de-

murrer should be aimed specially at the improper matter. ·Where, however, after overruling such general demurrer, the court gives relief only justifiable upon such improper matter, it is reversible error. (p. 499).

5. SURETY—*Not Released—When Funds in His Hands.*
A surety having in his hands a fund which he may apply to pay the debt is not released by indulgence extended the principal debtor by the creditor. (p. 501).

6. SURETY—*Not Released Unless Really Injured.*
A surety will not be released by indulgence to the principal by the ·creditor in any case where it clearly appears that the act of the creditor has worked no real injury to the surety, as where the principal is notoriously insolvent at the time. (p. 501).

7. ARBITRATION—*Void Unless all Parties Interested Join.*
A submission to arbitration of a controversy pending in a suit not joined in by all interested in that controversy is void as to those not joined in the submission. (pp. 502, 503).

8. AWARD—*Mutuality Must Exist.*
An award must have mutuality in its effect. If it will not avail one party to his benefit, it will not bind him to his prejudice in favor of another. An award does not avail or bind a stranger. (p. 503).

9. AN AWARD—*Void—Concludes Nothing.*
An award which is for any reason void does not merge or conclude a matter to which it relates. (pp. 504, 505).

10. SURETY—*Claiming Release Must Show Suretyship.*
A surety claiming release by indulgence to the principal debtor must prove that he is a surety. That burden rests on him. (p. 498).

11. ARBITRATION—*Does not Release Surety.*
An agreement by a creditor to submit his claim to arbitration, the award to be returned to court for judgment upon it, does not thereby release the surety who does not unite in the award. (p. 499).

12. AN AWARD—*Not a Lien.*
An award is not of itself a lien on land. To make it a lien, or to give execution, it must be made the judgment or a decree of a court. (p. 505).

13. AN AWARD—*Must Be Entered as a Judgment.*
An award returned to court must be entered up as the judgment of the court, after rule or notice to the parties to show cause why it should not be entered as the judgment of the court, in order to constitute a lien, or have writ of execution. (p. 505).

14. OBJECTION TO SURETY'S RELEASE—*Must be by Answer.*

The objection that a surety is released from a debt by reason of indulgence granted to the principal debtor cannot be made by mere exception to the report of a commissioner. The objection by a defendant must be made by answer or other proper pleading. (p. 497).

15. ANSWER—*Affirmative Relief—Parties.*

An answer not intended as a mere defense to the bill, but to affect the rights of a co-defendant, must make him a party, and call for relief against him upon its facts, as in case of a cross bill, and process to answer it must be served upon that defendant. (pp. 497, 498).

16. PROPER PLEADING—*Adequate Facts.*

A decree must have for its basis a proper pleading giving adequate facts to support it. (p. 498).

17. EQUITY—*Doctrine of Merger—Lien.*

The doctrine of merger is not inflexibly applied in courts of equity. It will not be there applied to destroy the security of a decree as a lien to the defeat of justice. (p. 504).

18. JUDGMENT—*Merger Not By Award.*

A judgment or decree will not be merged by an award upon the same original cause of action not made the judgment or decree of a court; but where the first judgment is the very subject of the arbitrament, it is merged and ended by an award whether carried into judgment or not. (p. 505).

19. AWARD—*Judgment Only Cumulative.*

Chapter 108 of the Code allowing an award to be entered as the judgment of a court is only a cumulative remedy, and does not take from it its common law force, though not entered as such judgment. (p. 505).

Appeal from Circuit Court, Wood County.

Suit by Smith D. Turner against Samuel Stewart and others. Decree for complainant, and defendant G. L. Seaman appeals.

*Reversed.*

WALTER PENDLETON and J. G. SCHILLING, for appellant.

SMITH D. TURNER and McLUER & McLUER, for appellees.

BRANNON, JUDGE:

Smith D. Turner filed a bill in the circuit court of Wood County against Samuel Stewart and others setting up that Turner had recovered a judgment against Stewart and Wells,

and that there were other judgment liens upon Stewart's land, and asking that the liens be ascertained and the land subjected to these judgments. Among these liens was a decree of the circuit court of Jackson County in favor of G. L. Seaman against O. B. Wells and Samuel Stewart for one thousand two hundred dollars and the bill sought to deny it a place as a lien on Stewart's lands on the ground that Stewart was a surety for Wells, and that Stewart and Wells had filed a bill of review in the circuit court of Jackson County to reverse the said decree of one thousand two hundred dollars and that pending such bill Seaman and Wells and all the parties to the suit in which said one thousand two hundred dollars had been decreed, except Stewart, had entered into an agreement submitting to arbitration all matters involved in said suit and in said bill of review, providing that the award under such arbitration should be entered as the decree of the circuit court of Jackson County, and that an award had been made by the arbitrators in favor of Seaman, Venoy and Burdett against Wells for one thousand three hundred and fifty-nine dollars; which was returned to and recorded in said court. Stewart died pending Turner's suit, and the case was revived against his representatives. The case was referred to a commissioner to report liens against Stewart's land and the debts against his estate, and the commissioner having reported Seaman's one thousand two hundred dollar decree as a lien, the administrator of Stewart excepted to the allowance of said Seaman's decree either as a lien or debt, claiming that said agreement to arbitrate released Stewart as a surety from the debt, and the circuit court sustained this exception and refused to allow Seaman's claim either as a lien on Stewart's land, or as a simple debt against his estate, and Seaman has appealed.

One ground specified for the reversal of the decree is, that the court overruled Seaman's demurrer to the bill. It is laid down in *Bensemer* v. *Fell,* 35 W. Va. 15, and *National Bank* v. *Distilling Co.,* 41 *Id.* 530, that a judgment in favor of A against B is conclusive, not only between them, but also as to strangers, as to the existence of the liability between A and B, and cannot be impeached by another creditor of B except for fraud or collusion. And it is further laid down in *Glenn* v. *Morgan,* 23 W. Va. 467, that whilst indulgence to a principal debtor by a creditor will, under circumstances, release a surety,

yet this is a defense personal to the surety, and a stranger cannot make this defense for the surety. Upon these principles so much of the bill as assailed Seaman's decree because of the release of a surety by reason of the agreement to arbitrate was improper and subject to demurrer, by a demurrer specially aimed at that matter; but as the demurrer was not such, but a general one, there is no error in the mere overruling of the demurrer, it being very clear that Turner had right to maintain a bill to enforce the lien of his judgment. *Miller* v. *Hare*, 43 W. Va. 647. But whilst there is no error in merely overruling the demurrer, this does not fully meet the objection of appellant's counsel under this head; for the court went on to administer relief upon that improper matter of the bill, by disallowing Seaman's debt. The demurrer could not dismiss the bill wholly, it is true; but that improper matter must not be made ground of relief. This is upon principle found in *Billingsley* v. *Menear*, 44 W. Va. 651, that when a bill contains sufficient allegations for one kind of relief, and insufficient for others, and the court overrules a demurrer and grants relief to the full extent of all the matter, proper and improper, the decree will be reversed. Also *Morgan* v. *Morgan*, 42 W. Va. 542.

It is, however, suggested, that though the debt of Seaman could not be denied on matter of the bill, yet as Stewart's administrator excepted to the allowance of that debt by the commissioner, that exception was ample to overthrow that debt. I do not think so. Cases are cited to show that when a cause is referred to a commissioner to ascertain debts, one creditor may contest the debt of another. This is so, if he contest on grounds available to him in that way. I do not see that this could be done by mere exception to a commissioner's report.

Such defense could be made by an answer setting up the matter working a release of Stewart as surety. By such an answer, framed like a cross bill, Seaman would be told of the facts supposed to work a release, and would be given opportunity to meet them; but mere exception to the report would not perform that office. The administrator of Stewart did file an answer setting up this matter; but it made no parties, asked no affirmative relief against the one thousand two hundred dollar decree in favor of Seaman, and no process issued upon it. A decree was rendered upon it in the absence of all

these things. This could not be done against a co-defendant. It is not an answer making a defense merely against a bill, but an answer to affect a co-defendant. The decree cannot stand upon such an answer. *Goff* v. *Price*, 42 W. Va. 365; *Martin* v. *Kester*, 46 *Id.* 438; *Grobe* v. *Roup*, *Id.* 488; *Wood* v. *Douglass*, *Id.* 657; *Sturm* v. *McGuffin*, *Id.* 395. And as shown above, that matter of the bill being improper in it, the bill cannot help the answer. The answer must be in and of itself adequate for such relief as a cross-bill. A decree must have for its basis a proper pleading, else it is no decree. *Martin* v. *Kester*, 46 W. Va. 438. Just the same defects exist in Wells' answer.

But let us suppose that this agreement to arbitrate had been properly introduced into the case as releasing Stewart as a surety. Could we then sustain the decree rejecting Seaman's debt? I think not, for the reason that it is not shown that Stewart was surety for Wells. The burden of proving this fact was clearly on Stewart. Seaman, Venoy and Burdett made a contract with Wells to cut and haul logs to a saw mill, and haul lumber from it to a railroad. Stewart wrote a letter to Venoy stating that he had shipped him hay and meal, and would ship him more, as also middlings, thus affording the inference that Stewart was the real contractor, not Wells, or that Stewart was interested jointly with Wells. The letter stated "in regard to your contract with Mr. Wells, I will see that you get your pay." Upon this letter was rendered the decree in favor of Seaman against Wells and Stewart for one thousand two hundred dollars, Seaman showing that he alone was entitled to the debt. This does not show the relation of surety and principal, but rather the reverse. Furthermore, Stewart and Wells made an agreement, another agreement, to arbitrate a controversy "as to the amount the first party (Stewart) owes, if anything, to said second party (Wells) on contracts for cutting, logging and sawing lumber and ties, and sticking and delivering lumber on board cars," thus tending to show that it was Stewart who was the real contractor, that is, that Seaman, Venoy and Burdett were really doing the work for him, as he got the lumber. The award under this arbitration found Stewart indebted to Wells in one thousand seven hundred and fourteen dollars and seventy-five cents, and provided that credit should be given Stewart for what might be decreed

against him in the suit in which Seaman obtained his one thousand two hundred dollar decree for a demand of Seaman, Venoy and Burdett against Wells and Stewart.

The legal question is raised as to the effect of the agreement to arbitrate to release a security. It is contended that a mere agreement to submit to arbitration is revocable, and does not tie the hands of Seaman, and therefore does release Stewart, if he were a surety. We are cited in support of this proposition to *Kinney* v. *B. & O. R. R.*, 35 W. Va. 385. That case only holds that a provision in a contract that any controversy under it shall be arbitrated, does not debar from suing, does not oust the courts of jurisdiction. That is so before a controversy has arisen; but an agreement to arbitrate an actually existing controversy is different. 2 Am. & Eng. Ency. L. (2d Ed.)₀ 570. By common law such an agreement is revocable until award made, and does not bar a suit on the original demand; but under our Code, chapter 108, an agreement for arbitration is not revocable. *Corbin* v. *Adams*, 76 Va. 58; 3 Cyc. 735; *Riley* v. *Jarvis*, 43 W. Va. 43. An award by common law was a bar to an action on the original cause. *Martin* v. *Rexroad*, 15 W. Va. 512; *Tennant* v. *Divine*, 24 *Id*. 387. Therefore, I should say that an agreement to arbitrate would release the surety, if an arbitration agreement would do so. But would it? Arbitration is a process of settlement of controversies allowed by the common law, and favored by it as tending to end them speedily and cheaply. It is expressly allowed by our Code. It is the substitution of a tribunal chosen by the parties instead of the regular courts existing by law; but that tribunal is one recognized by law as a legitimate medium for the adjudication of contested rights. 3 Cyc. 581; *Wamsley* v. *Wamsley*, 26 W. Va. 45. . This agreement provided that the award should be returned to court for decree, and thus contemplated all the benefits of a decree against the debtor by lien and execution for the protection of the surety. I do not say how it would be in the absence of such provision. Therefore, I do not see why the selection of this process by a creditor to enforce his demand should alone release a surety as granting extension of time any more than suing the principal alone in court.

Counsel for Stewart contends that the arbitration released him, and cites *Coleman* v. *Wade*, 6 N. Y. 44. This case is referred to in 2 Am. & Eng. Ency. L. 804, note 1 (2d. Ed.),

where it appears that it was not merely the agreement to arbitrate that worked a release of the surety, but an actual award extending time of payment.

There is another reason why the agreement to arbitrate does not release Stewart. He united in the bill of review for the very purpose of suspending and reversing Seaman's decree before this agreement to arbitrate. He it was who first sought to defeat the collection of that decree from Wells. And he asked a court of equity, under such circumstances, to say that extension of time by Seaman released him? The bill of review is not in the record, but the theory of Stewart's side of the case is that the arbitration involved the bill of review, and the bill of review involved Seaman's decree. If so, that bill of review tied up the decree, if an injunction was awarded to its enforcement; and if such injunction was not awarded, still the bill of review would justify Seaman in waiting until its decision, and debar Stewart from saying that the arbitration released him. So a court of equity would say, because Stewart was fighting and delaying the collection of the decree. In truth the agreement does not include that bill of review, it being a separate suit, and it is doubtful whether we can say that arbitration related to that decree, as it is not reasonable to say that the agreement to arbitrate the main suit intended to contest what was a final decree; but in view of the latter consideration I am proceeding on the theory that the agreement made the decree the subject of arbitration.

Another reason why said agreement to arbitrate does not release Stewart is, that before the date of that agreement and after Seaman's decree, Stewart and Wells made another agreement to arbitrate the matters in difference between them growing out of the same transaction out of which Seaman's decree arose, and the award found Stewart in debt to Wells one thousand seven hundred and fourteen dollars and seventy-five cents, a sum greater than Seaman's decree, and provided that Stewart should have credit for whatever sum might be awarded or decreed H. S. Venoy & Company, in their suit against Stewart and Wells and that if Stewart should be held liable therein the amount should be deducted from said one thousand seven hundred and fourteen dollars and seventy-five cents. This suit of H. S. Venoy & Company was a suit wherein the one thousand two hundred dollar decree was rendered in favor of Seaman, he

having shown that for cutting and hauling timber by Seaman, Venoy and Burdette, partners as H. S. Venoy & Company, he was entitled to the debt, and Stewart having gotten the lumber, was responsible. Stewart claimed the right to retain this money from Wells' recovery to indemnify him against this very demand. The firm had cut and hauled timber and lumber under contract with Wells, and became liable to Wells, and as the firm was demanding pay from Stewart he asked the privilege of retaining the fund to meet any recovery by the firm against him. The decree had been rendered in favor of Seaman, but was still in litigation on the bill of review. Thus, Stewart had in his hands for indemnity a fund more than sufficient to meet this demand as shown by an award binding between him and Wells. 1 Brandt on Surety and Guaranter (1 Ed.) s. 147 says: "A surety who is fully indemnified is not discharged by the release of the principal. In such case the surety himself occupies the position of a principal."

Stewart was thus paid to pay this debt. How could he be harmed by indulgence to Wells by the arbitration? "The discharge of Freer (principal) could in no possible way interfere with their rights or liabilities, so long as they held in their hands a complete indemnity against the bond, and he is not accountable to them, if they are obliged to pay it." Opinion in *Moore* v. *Paine,* 12 Wend. 123. See *Crim* v. *Fleming,* 101 Ind. 154. It is on the same principle as an endorser who has a fund in his hand to indemnify him. In *Bank* v. *Vanmeter,* 4 Rand. 558, Judge Green said, that the endorser was not released "because he could not possibly suffer any damage by failure to give him notice: since the only purpose of notice would be to inform him of the necessity of resorting to the drawer for indemnity, which in this case, is unnecessary, as he already has indemnity in his hands." This obvious doctrine is found in 2 Dan. Nego. Ins. s. 1128 and *May* v. *Beissean,* 8 Leigh pp. 185, 196. This doctrine is founded on the principle that indulgence by a creditor to a principal debtor does not release a surety when it can work no harm to him. *Bank* v. *Parsons,* 45 W. Va. p. 699. "But the surety will not be discharged in any case where it can be clearly proved that the act of the creditor has worked no real injury." 2 Danl. Nego. Ins. s. 1311. Under the rule last stated it seems to me that another reason why this arbitration cannot release Stewart is that Wells was in-

solvent. Where a note is assigned the assignee is excused from suing upon it if the debtor is insolvent. The law does not require a vain and useless thing. This is supported in the case of *Barnard* v. *Marlin*, 17 S. E. 536. So, even if Stewart were proven to have been a surety for Wells, as he has not been, still the submission to arbitration would not release him.

We may plainly go further to fortify the position of indemnity just stated, and say that as Stewart had in his hands this money, we may regard this award as one in favor of Seaman, and as giving him right upon it, alone, to sue Stewart for its amount, though Seaman was a stranger to this award, because as to Stewart and Wells it was binding and deducted a fund for Seaman, as we find it stated in 2 Am. & Eng. Ency. Law, note p. 811 that an award that one of the parties pay a sum to the creditor of another party may be enforced by the creditor, though a stranger to the award, citing *Scearce* v. *Scearce*, 7 Ind. 286. I think that principles stated in *Hooper* v. *Hooper*, 32 W. Va. 525, and perhaps in *Roberts* v. *Coleman*, p. 156, go in this direction. This position I just notice finds support in 2 Am. & Eng. Ency. Law, 806, stating that "an award has sometimes been admitted as evidence in favor of strangers." Also by 3 Cyclo. Law & Prac. 690. Is not this instance one within the reason of that exception to the general that an award does not bind strangers? This award is in favor of this stranger.

Another question in the case is, does the award do away with Seaman's decree? Is it merged in the sum found by the award in favor of Seaman, Venoy and Burdette against Wells? It is claimed that the submission did not refer to the matter in controversy in the suit of Seaman and the bill of review therein, but described another suit; but no other suit to which it could apply appears, and, besides, I think it fairly appears that it does so apply.

Does this award destroy the lien of Seaman's decree for one thousand two hundred dollars? I think not, and for several reasons. The submission was not signed by Stewart. "If parties to a pending suit enter into a submission to arbitration, all those who are of record parties to the suit must unite in the submission, whether they are really interested or nominal parties only." 2 Am. & Eng. Ency. L. (2d Ed.) 619. "A submission to arbitration of a pending suit, without the consent

of all parties thereto whose interest may be affected by the awards, is irregular and void." 3 · Cyc. 603. "An award can have no effect to establish rights or duties in favor of or against persons not parties to the submission." 3 Cyc. 688. "The rule is, that an award cannot be enforced either by or against a stranger to the submission; nor can he avail himself of it as a defense." 2 Am. Eng. Ency. L (2d Ed.) 804. Stewart's representative seeks to use this award to merge in it the decree of Seaman and thus deny its character as lien; but as a stranger to it, he cannot do so. Will any one say that Seaman could enforce that award against Stewart? Surely it does not bind Stewart to pay the sum awarded Seaman and his partners against Wells. As it cannot operate in favor of Seaman, it cannot operate against him. "An award to be binding must be mutual." 3 Cyc. 703. "An award directing performance or procurement of an act by a stranger is void—at least in that respect—and, when a party can not enforce an award in the particulars in which it operates in his own favor, he cannot be concluded by it in those respects in which it operates against him." 3 Cyc. 689. It is true, "It is a general rule that a valid award operates to merge and extinguish all claims embraced in the submission. Thereafter the submission and award constitute a bar to any action on the original demand." But "where the award is void, it will not bar an action on the original demand." 3 Cyc. 727, 734. "Where, for any reason, the award is void or not final or decisive, it will not bar an action on the original demand." 2 Am. & Eng. Ency. L. (2d Ed.) 797. Moore on Arb. and Award, 491. Stewart not being a party to the award, as between him and Seaman, it is void, and therefore does not destroy Seaman's decree, and could not operate as a release of Stewart as surety. It can not be held to find Wells alone as bound for the indebtedness for reasons stated, and for the further reason that it expressly declares Stewart bound as surety. Though as Stewart is a stranger to this arbitration this award cannot bind him, it negatives any claim that Wells alone, and not Stewart, was bound for the debt. This award is not available to Seaman. Even if Stewart were a party to it, it would be no lien, as it has never been made the judgment of the court.

An award of itself is not a lien. 3 Cyc. 735. Yet it is said this award destroys the lien of Seaman. Would equity take

away from Seaman the lien of his decree and give nothing in return? As it cannot give him the benefit of the award, will it not give him his decree? Would it be equity to do otherwise? A forthcoming bond is a merger or satisfaction of a judgment until it is quashed, when the judgment is resuscitated; but equity still holds that the original judgment lien stands, if it be necessary to do justice to the creditor by reason of defect of the bond. *Jones* v. *Myrick*, 8 Grat. 179. And would a court of equity hold this lien as dead in the face of the fact that the award itself declared Stewart liable, and thus the arbitration was not intended to release him, when as a stranger he could not get the benefit of the award? It would still preserve the lien of the decree for Seaman's payment.

This doctrine of merger, which, in this case, would be the annihiliation of the prior security by another later one, is technical, and ought not to be permitted, even if by technical law it could be applied in this case, as it cannot, to defeat justice. It has more rigid force in courts of law than in courts of equity. The latter courts will apply it, or refuse to apply it, as justice demands. In 20 Am. & Eng. Ency. L. 590, we find it stated that "in equity the legal rule of merger is not regarded as inflexible," and many cases are cited in note 10 for the proposition that "equity consults justice and intention of the parties." The intention of the award was not to destroy, but to enlarge Seaman's rights, and even if Stewart had been a party to the award, so as to confer its benefit upon Seaman, equity would not destroy the lien of his decree until the award was carried into decree so as to be a lien; and even then I think it would not post-date his lien to the date of the award or decree upon it, but would let him retain the lien of the decree as of its date, to the extent of its amount. Equity will not destroy securities on mere technicality to defeat justice, but will look at substance and preserve securities to attain such justice.

Another consideration is presented as to the effect of the award as a merger, that is, whether a decree or judgment merged by an award, as the general rule is that merger is only of a lower security by one higher in legal dignity. Here a question would arise whether this award is a decree in its force, that is, whether when a submission to arbitration provides that the award shall be entered as the judgment of a court, and is thus a statutory award, an actual judgment or decree upon it is es-

sential to make it a judgment under Code, chapter 108. This award was returned and entered by an order made in the case; but there was no actual decree of the court declaring it to be the decree of the court, or decreeing otherwise upon it. Does the award thus stand, in law, as the decree of the court? Or is the award simply returned for decree? I think that a judgment or decree is necessary in order to call for execution or be a lien. No doubt such award, as one at common law, though not returned or entered in court, has its legal effect of finality upon matters submitted, the statute being only cumulative, giving right to carry the award into judgment for lien and execution; but to have execution or lien as upon a judgment or decree it must be returned to court. Code, chapter 108; *Stevenson* v. *Walker*, 5 W. Va. 427; 2 Am. & Eng. Ency. L. (2d Ed.) 731; 3 Cyc. 672. It seems to me that the mere return to the clerk's office is not enough to give the award the force of a judgment; and also that the mere entry or recital of the award as a part of the record of the case, is not enough to make it a judgment or decree, because the practice is to award a rule to show cause why the award should not be entered as the judgment or decree of the court, and the law seems to require such rule. 3 Cyc. 797, 802. Therefore, the entry in the record of the award was merely recital of it as the basis for decree after rule served. But though an award, not made the judgment or decree of a court, has not force to give a lien on land or writ of execution, yet the statute providing for its being made the judgment or decree of the court is only cumulative as to means of enforcement of award by lien or execution, and does not deprive the award of its common law efficacy. It has the force to merge the matters embraced in the arbitration, to end them, so that the award is the only test of the rights of the parties as to such matters, and the award is enforceable by such process as the common law gives, action or attachment. 3 Cyc. 776, 793, 800.

It does not seem to me that an award upon the same original cause of action as was the basis of an antecedent judgment, will merge that judgment, unless carried into a second judgment but when the subject of the arbitration is not the original cause of action, but the former judgment, it is different, because "when one judgment is made the basis of the recovery of another judgment, the first judgment, with all its incidents and liens is merged in the second." 20 Am. & Eng. Ency. L. (2d

Ed.) 600. But we cannot find that, in fact, the bill of review did contest the one thousand two hundred dollar decree, and therefore we cannot say that it, and not the original cause of action, was the basis of the award; that is, we cannot find that that decree was the bone of contention upon the bill of review, and the basis of the award, because the bill of review is not before us. A bill of review is another suit and the submission being only of matters in controversy in the main suit, we cannot say that the decree of one thousand two hundred dollars was the matter arbitrated. This forbids from holding that the decree is merged and ended.

Therefore, we hold that Seaman's decree is a valid lien upon Stewart's realty at its date and a debt against his estate, and as the decree gave Wells the whole of the debt awarded, without deduction of the amount due Seaman, so that we cannot conveniently in this Court modify the decree, and marshal the liens, we reverse the decree, and remand the case to the circuit court with direction to enter a decree giving Seaman the benefit of his decree of one thousand two hundred dollars as a lien in its proper order on Stewart's realty.

*Reversed.*