W. T. Hughes, *et al. v.* National Fuel Company

(No. 8848)

Submitted May 9, 1939. Decided June 20, 1939.

*Terence D. Stewart* and *Ezra E. Hamstead,* for appellant.

*William T. Hughes, Jr.,* and *Geo. R. Farmer,* for appellees.

Maxwell, Judge:

The plaintiffs, W. T. Hughes, Retta D. Hughes, Ernest H. Gilbert, Jr., Mary Gilbert, W. F. McKain, Hallie McKain, Alice Davis Trotter and James F. Trotter, instituted this

chancery suit in the circuit court of Monongalia County against National Fuel Company, a corporation, defendant, for the purpose of abrogating an arbitration award unfavorable to the plaintiffs and in favor of the defendant, and, notwithstanding the award, to obtain a decretal judgment in favor of the plaintiffs against the defendant for an amount claimed on account of unmined coal. From a decree granting the plaintiffs relief in conformity with the prayer of their bill, an appeal was awarded the defendant.

The background of the suit lies in a lease, for coal mining purposes, of a tract of 19.9 acres of Pittsburgh coal in Monongalia County, executed by the plaintiffs to the defendant in 1931. Under authorization of the lease, the defendant proceeded to mine the coal, but, in the course of the operations, the plaintiffs complained to the defendant that it was not taking the coal to a sufficient height. This coal seam is eight or nine feet in thickness, but the defendant, generally speaking, did not remove any coal above what is known in the record as the six-foot binder which is a very thin stratum of slate extending longitudinally through the coal at a height of from six to six and one-half feet from the bottom of the seam. The plaintiffs assert that the defendant should have mined at least one more foot of top coal. The defendant claims that it took all of the top coal which was marketable and all that could properly be removed in accordance with safe mining methods.

The lease contains this paragraph: "Sixteenth: In the event of difference arising between the lessors and the lessee, under the terms of this agreement, or the construction of any clause thereof, or the rights and obligations of the lessors or the lessee hereunder, all such questions shall be determined by arbitration, but pending arbitration between the parties hereto, there shall be no cancellation or forfeiture of this agreement. In all such cases the matters in difference shall be referred to two arbitrators, one to be chosen by the lessors and one by the lessee, and if said arbitrators cannot agree, they shall

select a third, and the decision of any two of such three arbitrators shall be final and binding, and shall be accepted as such by the parties hereto."

After there arose the controversy whether the defendant had removed a sufficient quantity of the top coal, the parties, in compliance with the above quoted provision of the contract, after the defendant had ceased operations, submitted to arbitration the question of whether the defendant was obligated under the lease to mine and ship more coal from the premises than it had mined and shipped, and, if so, how much the defendant owed the plaintiffs for coal unmined and not paid for, and for which payment had been demanded by the plaintiffs. Thereupon, the plaintiffs selected as aribtrator S. Dunlap Brady, and the defendant selected C. W. McCutcheon. These two chose A. C. Beeson as the third arbitrator. The three conducted a hearing, following which Beeson and McCutcheon made a finding adverse to the claim of the plaintiffs. Soon after the award against the plaintiffs, they instituted this suit.

As disclosed by the bill, the bases of the attack on the award are (1) that arbitrator McCutcheon acted as an advocate, witness and agent for the defendant when the matter in controversy was being heard by the arbitrators; (2) that the award was not responsive to the questions submitted for arbitration; (3) that the award on its face discloses palpable error.

The defendant's answer and first amended answer, in their entirety, were held insufficient on demurrer. The second amended answer was held good with respect to parts thereof, but the paragraphs wherein the defendant undertook to meet the allegations of the bill attacking the award were held insufficient and were stricken out because, in the court's opinion, they did not constitute a defense to the portions of the bill charging impropriety in the award. Following that adjudication of insufficiency the court decreed: "And the Court being further of the opinion that no further amendments should be permitted to said answer of the defendant, and the said bill of

complaint having alleged that the award exhibited with said bill of complaint made by A. C. Beeson and concurred in by C. W. McCutcheon is invalid, and the Court from inspection of said award is of the opinion that said award is invalid, and that said plaintiffs having prayed in their bill that said award as filed by Beeson and concurred in by C. W. McCutcheon be set aside and held to be invalid and of no effect, it is, therefore, adjudged, ordered and decreed that the said award be and the same is hereby set aside and held for naught."

Following this ruling of the chancellor rejecting the award, there was directed an issue out of chancery resulting in a jury verdict in favor of the plaintiffs and against the defendant for $2,400.00. The court approved the verdict and entered a decretal judgment thereon.

In the rejected portions of the second amended answer, by way of avoidance of the paragraphs of the bill attacking the award, the defendant alleges that after the arbitrators had been chosen, but prior to the hearing on the arbitration, Brady and McCutcheon, arbitrators, agreed that they would present the evidence for the respective sides which had chosen them and that the third arbitrator, Beeson, should pass upon the evidence presented at the hearing and, after full consideration, would make a report thereon and present the same to the other two arbitrators for their approval or disapproval; that the plaintiffs had full knowledge of that arrangement and made no objection thereto, and that Brady did represent the plaintiffs at the hearing with their acquiescence; that at the conclusion of the hearing the arbitrators agreed that Beeson should prepare a written report or award and would present the same to Brady and McCutcheon for their action thereon, and that the plaintiffs knew of that arrangement and made no objection to the same, and that such course was followed without protest. Also, there is full denial by the defendant of every element of impropriety charged by the plaintiffs against the award.

On this setting, there necessarily arises the question whether the trial chancellor acted with warrant of law in

sustaining the plaintiffs' demurrer to those portions of the defendant's second amended answer presenting matters of defense to the plaintiffs' attack on the award. Did the chancellor properly hold that the condemned paragraphs of the second amended answer constituted no defense?

"Arbitration is a process of settlement of controversies allowed by the common law, and favored by it as tending to end them speedily and cheaply." *Turner* v. *Stewart,* 51 W. Va. 493, 499, 41 S. E. 924, 927. "The settlement of disputes by arbitration is a matter of ancient practice at the common law." *Miller* v. *Brumbaugh,* 7 Kansas 343, 350. Consult: *Burke Grain Co.* v. *Stinchcomb,* 70 Okla. 89, 173 Pac. 204, 6 Corpus Juris Secundum, p. 155. On this subject, many of the states have enacted statutes generally considered supplementary to, but not exclusive of, the common law procedure. 3 Am. Jur., p. 838. The statutes are cumulative merely. *Turner* v. *Stewart, supra,* p. 505.

At common law an agreement to submit to arbitration was revocable at any time before award. IV Minor's Institutes (2d Ed.), p. 150; *White Eagle Laundry Co.* v. *Slawek,* 296 Ill. 240, 129 N. E. 753. Also, though an award was conclusive of the matter arbitrated and extinguished the original demand, it did not have the standing of a judgment or decree. IV Minor's Institutes (2d Ed.), p. 147. An award was enforceable only by action based thereon. 6 Corpus Juris Secundum, p. 268. The purpose of statutory enactments on the subject is to afford a more efficacious procedure for the arbitration of controversies. Notably, as evidenced by the West Virginia act, a statutory agreement to arbitrate a matter in controversy cannot be revoked except by leave of court. Code, 55-10-2. And, under the statute, an award may be entered as a judgment or decree of the court and enforced as such. Code, 55-10-3. Such award may not be set aside except for errors apparent on its face, "unless it appears to have been procured by corruption or other undue means, or by mistake, or that there was partiality or misbehavior in the arbitrators, or any of them, or that the

arbitrators so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made." Code, 55-10-4.

A contract to submit future differences to arbitration is not binding. *Kinney* v. *B. & O. Ass'n.*, 35 W. Va. 385, 14 S. E. 8, 15 L. R. A. 142; IV Minor's Institutes (2d Ed.), p. 154. But where a contract for future arbitration of possible controversies has become executed in respect of any pertinent matter of difference between the parties, the award is binding. 3 Am. Jur., p. 856.

At bar there is presented an executory contractual provision for common law arbitration. The arbitration paragraph of the contract could have been repudiated by either of the parties prior to the award of the arbitrators. But neither party refused arbitration when such rejection could have been made as a matter of right. They voluntarily arbitrated their differences. Their executory undertaking became executed. For sufficient cause either of the parties can now repudiate the award, but without sufficient cause neither may do so. "Awards are to be favorably and liberally construed, and are not to be set aside unless they appear to be founded on grounds clearly illegal." 2 Tucker's Commentaries, p. 40.

To justify repudiation, the plaintiffs, by allegations in their bill, make a *prima facie* case. They allege improper conduct by two of the arbitrators, non-responsiveness of the award to the questions submitted, and incongruity on the face of the award. The first and third are factual matters against which the defendant has the right to defend by answer and proof. In its second amended answer, the defendant seeks to meet the first charge, being that of partisanship and advocacy on the part of arbitrator McCutcheon by alleging that his course of action was in accord with an understanding formulated among the arbitrators and was done with the knowledge of the plaintiffs. If this explanation can be sustained by proof, a complete defense is thereby established to that particular challenge of the arbitrators' conduct and their award. In the early case of *Wheeling Gas Co.* v. *City of Wheeling,*

5 W. Va. 448, it was held that where parties to a controversy are content to submit their problem "to those who are known to have formed and expressed opinions upon the subject matter, or who are known to have partialities and prejudices for or against the respective parties, an award made by such arbitrators is binding."

Respecting the proposition that the award was not responsive to the submission, the plaintiffs allege in their bill that the question was "whether the defendant had mined and removed all of the coal, which, under the contract, it was in duty bound to mine and remove and pay for or in the default of mining same to pay for said coal in any event, the sole finding of said McCutcheon and Beeson being set forth in the last paragraph thereof, which is as follows: 'am therefore of the opinion that the lessor had been adequately compensated for the coal removed from this tract under the terms of the lease'."

The award is in the form of a letter addressed by Beeson to Brady and McCutcheon. The letter, with McCutcheon's concurrence, reads: "The following is my opinion in the arbitration of a claim by certain lessors represented by Mr. W. T. Hughes for an additional payment of royalty from a tract of coal leased to the National Fuel Company on May 16th, 1931.

"It is the generally accepted practice when mining the Pittsburgh seam of coal in the region covered by this lease to leave from nine to fifteen inches of coal in the roof to avoid the necessity of handling draw slate with the dead work costs incident thereto. When this practice is taken into consideration, I am of the opinion that 10,000 net tons per acre should be a fair recovery from a lease to a Commercial Mining Company and this opinion is confirmed by the examination of a number of leases in neighboring coal many of which specify a minimum recovery of 10,000 net tons per acre and none that I have seen require a higher minimum.

"In a lease of the kind in question where no minimum recovery per acre is specified it would be necessary to prove one or both of two things to substantiate a claim

for a larger recovery than is usual in the district: (1) That considerable coal had been lost through improper mining methods or (2) that the height of the coal seam warranted a higher recovery per acre than usual. In the first instance I am of the opinion that the lessee complied with the second paragraph of section eight of the lease in that they used the same method of mining and removing the coal from their own property and that the recovery was not less per acre in the leased premises than in their own acreage. In the second instance there is a good deal of uncertainty as to the height of the coal in the tract covered by this lease. Mr. Hughes says it was nine feet thick. Mr. Davis and Mr. McCutcheon say it was eight feet but only one definate measurement was offered by the lessors and there was some uncertainty as to its location.

"The failure of these lessors to furnish a series of accurately taken and carefully recorded measurements over this entire tract make it impossible to figure how much coal there was per acre in the tract, whether more coal could have been recovered than actually was or to compare results here with the experience of other mines.

"I am therefore of the opinion that the lessor has been adequately compensated for the coal removed from this tract under the terms of this lease.

Yours very truly,<br>(Signed) A. C. Beeson.

"I concur in the above opinion expressed by Mr. Beeson.

(Signed) C. W. McCutcheon."

This finding or award of the two arbitrators cannot be appraised solely by the inept phraseology of its last paragraph as quoted in plaintiff's bill. The contents of the award as a whole must be taken into account in determining what the appraisers meant to do. In the second, third and fourth paragraphs of their report, the majority arbitrators make clear their reasons why, in their opinion, the defendant was not bound to mine and remove or pay for more coal than that for which it had accounted. "All fair presumptions shall be made in favor of an award."

*Coons* v. *Coons,* 95 Va. 434, 28 S. E. 885, 886, 64 Am. St. Rep. 804. So, we are impressed that the challenge of the award on the ground of non-responsiveness to the submission is not well taken.

The bill's third point of attack on the award reads: "Further, that it having been admitted that only 6.1 feet of said coal had been mined and removed, said award is further invalid and palpably erroneous since said opinion of Beeson and McCutcheon states that it is the generally accepted practice in mining Pittsburgh coal in that region to leave unmined only from 12 to 15 inches of coal and McCutcheon had said the average height or thickness of said seam of coal is 8 feet." The recital, "it having been admitted that only 6.1 feet of said coal had been mined and removed", is grounded on an earlier allegation of the bill that McCutcheon had admitted in the course of the arbitration "that only an average height of 6.1 feet of said coal had been removed." This third phase of the challenge is, in effect, a charge that the finding is inconsistent and contradictory on its face, in that it discloses, notwithstanding the award in favor of the defendant, that an excessive amount of top coal was left unmined by the defendant. As shown, the basis for this proposition lies not alone in the report itself but partly in statements or admissions alleged to have been made in the course of the arbitration. There is thus presented a factual matter which can properly be determined only under the issue made by the allegation of the bill and the denial of the answer. Proof is necessary. And on the proof there must be determination whether the award presents an inconsistency in this particular.

The question has arisen whether Beeson acted as an arbitrator or in fact as an umpire. Where a controversy is submitted to arbitrators (provision not made for an umpire) the award must be concurred in by all or a majority of the arbitrators, depending on the express or implied terms of the agreement to arbitrate. Morse on Arbitration and Award, pp. 162, 163. An umpire is one clothed with authority to act alone in rendering a de-

cision where the arbitrators have disagreed. 3 Am. Jur., p. 913.

In the situation involved in this case Beeson did not presume to render a sole decision but merely to express his conclusion of what the finding should be. It would have stood for naught without concurrence therein by one of the other arbitrators. He submitted his report to his two colleagues. One of them, McCutcheon, approved the same and adopted it as his own. Thus it became a majority award. The contract expressly provides that an award by two of the arbitrators shall be final and binding, and shall be accepted as such by the parties. True, the defendant in its second amended answer mistakenly refers to the role filled by Beeson as that of an umpire, but that erroneous view of the correct analysis of the situation, as disclosed by the award itself, can in no wise determine the matter in its actuality.

For the reasons set forth we are of opinion to reverse the trial court's decree of June 10, 1938, and to remand the cause for further proceedings not at variance with this opinion.

*Reversed and remanded.*

KENNA, JUDGE, dissenting:

I agree with the trial chancellor that the answer to the bill of complaint filed on behalf of defendant, National Fuel Company, contains no allegations sufficient to meet the allegations of the bill and its prayer to ignore the award of arbiters, consider the cause on its merits and enter a decree in favor of the complainant. I think that the course pursued in submitting the cause to a jury on an issue out of chancery and entering a decretal judgment for the amount of the jury's verdict in favor of complainant was free from error.

Supposedly arbitration is an impartial procedure, and arbiters are free from prejudice. Sturges on Commercial Arbitrations and awards, page 371; 2 R. C. L., page 372, paragraph 20. The answer of the coal company virtually

admits that the arbiter named by it, although not carried on its payroll, was a mining engineer frequently in its employ and apparently with pre-conceived opinions as to the feasibility and adequacy of their mining development. The two chosen arbiters having failed to reach a conclusion, picked a third who did not sit with them in an effort to reach a joint determination, but to whom the other two arbiters submitted their respective contentions, and the third simply cast the deciding vote between two contending representatives of the two sides to the controversy. I think this is not arbitration. Instead of being a device to eliminate controversies, to my mind, it would multiply and magnify contentions between the contracting parties.

There is conflict in the cases on the question of whether jurisdiction can be conferred upon arbiters by consent, or whether their lack of jurisdiction must not be raised in the proceedings objected to before the award. The contention is made here that after the award, it comes too late to contend that the proceeding fundamentally differed from an arbitration. I believe that the sounder view applicable to what is termed common law arbitration, which this is, is that which likens it to a court's jurisdiction of the subject matter. There are many ways in which arbiters can obviously exceed their jurisdiction. For example, would they have the right, as would a trial chancellor, to refer a controversy of fact to a jury of twelve? Should it not logically follow that, in the absence of a specific agreement to submit the matters in controversy to a different kind of tribunal proceeding in a different manner, the well established general rules governing arbitration and the qualifications of arbiters should be followed? Should this be so, then I do not think that the lack of objection can, by implication, confer jurisdiction to hear and decide the matters in controversy in any different way. Of course, an express agreement might well lead to a different result.

Neither do I think the award responsive to the questions submitted. The wording of the award is "the lessor

has been adequately compensated for the coal removed
* * *." This was already known to be a fact. The question
to be decided was whether *all minable coal had been re-
moved.* This was not decided.

I have not undertaken to go into detail, but have stated
what I think are, under the allegations of the bill of com-
plaint and the admissions of the answer, uncontroverted
facts. I think the bill constituted an adequate attack upon
the award and that the answer filed was insufficient. I
see no reason to set aside the jury's finding nor the trial
chancellor's decretal judgment.