JOSEPH WHITNEY, Appellant, v. THE CHICAGO, ANAMOSA & NORTHERN RAILWAY COMPANY, ET AL., Appellees.

**Railroads:** TAX IN AID OF: COLLECTION: CONDITIONS PRECEDENT. The
1 condition precedent to the collection of a tax in aid of a railroad, that it shall complete and have in operation its road between certain points and construct and maintain a depot within a certain distance of a designated place, is complied with when the road is in operation and a permanent depot constructed within the required distance though on a spur from the main line.

**Same.** The construction of a well built building adapted to the
2 purpose and sufficiently large for all present needs is a compliance with a condition precedent to the collection of a tax in aid of a railway, that it will build and permanently establish and maintain a freight and passenger depot.

**Same.** When a tax is voted in aid of a railway company on condi-
3 tion that it will construct and operate its line between certain points, the tax is earned when the line is thus in operation, irrespective of its financial ability to extend further.

**Same.**  Where the only conditions upon which a tax in aid of a railway was voted were, that it should construct its line between certain points and build and maintain a depot within certain limits, a taxpayer and prospective stockholder cannot enjoin the collection of the tax on the ground that the company had issued bonds, even in excess of the statutory limit.

*Appeal from Linn District Court.*— HON. J. H. PRESTON, Judge.

WEDNESDAY, MARCH 6, 1907.

ACTION in equity for an injunction to restrain the collection of a tax, etc.  From a decree in favor of defendants, the plaintiff appeals.— *Affirmed.*

*Smith & Smith* and *Voris & Haas,* for appellant.

*Remley & Remley* and *Bonson, Kenline & Roedell,* for appellees.

BISHOP, J.— Acting under authority of Code, section 2084 *et seq.,* and on January 20, 1904, the electors of Boulder township, Linn county, voted a tax of three per cent. on the taxable property of said township for the purpose of aiding the defendant railway company in the construction of a line of railway extending from the city of Anamosa, in Jones county, to the city of Waterloo in Black Hawk county.  Such was the purpose of the tax as stated in the notice given of the election, and such notice also contained the statement that " said tax proposed to be voted to be collected in one payment the first year after the same is voted, provided said line of railway is then completed and in operation from the city of Anamosa to the village of Prairieburg in said Boulder township, and in no case is such tax or any part thereof, to become due and collectible until said line of railway is fully completed and in operation between said city and village," etc.  The notice contained

the further provision that " on presentation of certificates issued by the county treasurer upon the payment of said tax, the said railway company shall issue to the holders of such certificates shares of its capital stock as provided by section 2088 of the Code." So, also, this: " For the consideration of the tax above described the Chicago, Anamosa & Northern Railway Company does hereby agree to build and permanently establish and maintain a freight and passenger depot within 100 rods from the section corner . . . same being center of Main street in the town of Prairieburg." A tax was levied pursuant to said election, and the defendant Carroll, treasurer of said county of Linn, was proceeding with the collection thereof when this action was brought. The action is grounded upon three principal matters of contention: (1) The company had not completed its line of road to and established a permanent depot in Prairieburg as stipulated for when the tax was voted. (2) That the company is insolvent, and unable by legitimate means, to construct the road to Waterloo, that being one of the conditions in consideration of which the tax was voted. (3) That after the tax was voted the company executed a mortgage upon the road securing bonds in excess of $18,500 per mile, in violation of law, and thus having the effect to render its stock valueless and working a fraud upon the taxpayers. These matters we shall consider in the order of their statement.

I. The evidence makes it appear that the road has been built and is in operation from Anamosa to Prairieburg, and to a further station beyond called " Coggin." The precise matter of contention is that the main line of the road as constructed is distant about one hundred and thirty-five rods at its nearest point from the center of Main street; that a spur track has been built from the main line to a point about eighty rods distant from the center of Main street and the depot has there been constructed. It is the argument that this fails

1. RAILROADS: tax in aid of: collection: conditions precedent.

of compliance with the stipulation on which the tax was voted. We are not disposed to share in the view thus taken. Looking to the notice, which alone evidences the stipulation, it provides that the road shall be built to Prairieburg, and that the depot shall be built within one hundred rods of the center of Main street. Now the evidence discloses that the road enters the corporate limits of the town, and that the spur track is wholly within such limits. There is, therefore, not only a substantial compliance, but a strict compliance. And the fact that the depot building is made to face a spur track instead of the main line track cannot, on any line of reasoning, be given operation to defeat this conclusion. The essence of the stipulation was convenient and accessible railway station service, and it is not even suggested in the evidence or argument that the depot as located results in inconvenience to any one, or that the station facilities are in any way other or different from what they would be were the depot facing directly on the main line. Our conclusion finds direct support in *Railway v. Rich,* 33 Iowa, 113. See, also, *Fitzgerald v. Britt,* 43 Iowa, 498, and *Jenkins v. Railway,* 29 Iowa, 255.

It is also a part of plaintiff's contention that the depot building is not permanent in character and permanently erected at its present location; that the defendant company 2. SAME. contemplate ultimately erecting their permanent depot on the main line of track. The proof shows that the building is well built, well adapted to the purpose and sufficiently large for all needs — present and for some time in the future. The only basis for the contention is that no permanent foundation has as yet been placed under it; hence that it can easily be moved. Officers of the company were witnesses, and they denied any intention or purpose on the part of the company to make a change. In this situation plaintiff can find no room to rest a complaint.

II. The second ground of contention is wholly without

merit. It was not shown that the company was insolvent. On the contrary, what evidence there is in the record on the subject discloses that the value of its property is in the neighborhood of half a million dollars, whereas its indebtedness does not greatly exceed $150,000. Moreover, it was not a condition upon which the tax was voted that the company should construct its road to Waterloo. The tax was earned when construction was complete to Prairieburg.

3. SAME.

III. It appears to be true that the defendant company had executed a series of bonds, secured by a trust deed covering its property; and, further, that the bonds as executed exceed in amount the sum for which, under Code, section 2088, bonds may be issued — the excess amount being $250 per mile. It appears, however, that before the final submission of the case, the company caused to be canceled a portion of the bonds, bringing the amount down to less than the amount authorized by law. It also appears that none of the bonds executed had ever been negotiated, but all remain in the treasury of the company or under its control. Now, certainly, as long as the bonds remain unnegotiated no one can be said to be harmed — no one has sustained a complainable injury. Assuming, however, that the company intend to, and will, negotiate the bonds, we may inquire what, if any, enforceable right of plaintiff will thereby be infringed, or, changing over the inquiry, what substantial wrong will be thereby inflicted upon him. Was there a condition attached to the vote ordering a tax levy and collection to the effect that the property of the company should remain unincumbered, and a violation of which condition would operate to defeat the consideration for the tax? And were the interests of plaintiff as a stockholder, or prospective stockholder, injuriously affected — and we assume the extreme — by the issuance and negotiation of the bonds? Each of these questions is read-

4. SAME.

ily answerable in the negative, and they may be considered together.

As we have seen, the conditions upon which the tax was voted are those which are contained in the notice of election.   The condition there is simply that stock in the company shall be issued to the persons called upon to pay the tax.  And this is not pursuant to any contract relation save as such can be said to arise from the requirement of the statute that stock shall be issued upon proper demand in all such cases.  Code, section 2088.   There is, then, no condition, and no agreement, express or implied, operating to forbid the issuance of bonds or the doing of any other act which, in the course of its business, the company might lawfully do.   It follows that the taxpayer must be held to take stock to which he is entitled in virtue of the statute on precisely the same basis as though he had subscribed therefor in the ordinary way, or had gone into the open market and made purchase thereof.   No one will contend that an enforceable contract to take and pay for stock in a corporation becomes unenforceable *eo instante* upon the issuance of bonds secured by trust deed by the corporation pursuant to the general authority given by law to do so.   To release a subscriber from his contract to take shares, there must be some distinct and material alteration in the purpose, character, etc., of the corporation whereby it has become essentially different from the corporation to which the subscription was made.   An outline of the subject is to be found in 10 Cyc. 405 *et seq.*, accompanied by a copious citation of cases.   There is no force in the contention of counsel that the execution by the company of a trust deed covering its property was, in effect, an alienation of such property, and hence, on authority of *Manning v. Mathews,* 66 Iowa, 675, and other like cases, sufficient of itself to defeat the collection of the tax.   The doctrine of the cases relied upon is that a taxpayer entitled to stock in the corporation, in aid of which a tax has been voted, cannot be required to accept

stock in some other corporation to whom the property, franchises, etc., and the control thereof, has been transferred. Quite different is the case where, as here, the original company retains ownership and control, but in the ordinary course of business, has, within legal limits, pledged its property as security for a loan borrowed to enable it to more effectually carry out the purposes of its organization. Moreover — and now considering plaintiff in the relation simply of a stock subscriber — there can be no ground for complaint based upon the proposed negotiation of the bonds. The value of the stock interest to be acquired by him will not thereby be impaired. In the absence of any evidence to the contrary — and such is the condition of the record — we must assume that the bonds will be negotiated at par. Hence the only change to be worked is in the form of the assets — the value of resources remain as before. It is upon these considerations that we conclude the complaint of plaintiff to be without merit.

Some other matters are discussed in argument by counsel for appellant. They are either disposed of by what has already been said, or are without merit. It is our final conclusion that the court below rightly refused plaintiff any relief, and the judgment is *affirmed*.