Statement.

# Richmond.

JUSTICE v. GEORGIA INDUSTRIAL REALTY CO.

March 11, 1909.

Absent, Keith, P., and Cardwell, J.

1. JUDGMENTS—*Fraud in Procurement—Collateral Attack—Condemnation Proceedings—Wife as Party—Dower.*—A wife having an inchoate right of dower in land is not a necessary party to a lawful proceeding against her husband to condemn the land for a public use, but is concluded by the judgment on the principle of representation, however irregular the proceedings or erroneous the judgment may be, but if the court was induced to render the judgment of condemnation by the fraudulent concealment of facts upon which it was founded, the wife, upon the death of her husband, may file her bill to set aside the condemnation proceedings and have dower assigned her in the land. A judgment or decree voidable for fraud practised upon the court which rendered it, and which is extrinsic and collateral to any issue submitted to the determination of the court may be impeached collaterally.

2. EMINENT DOMAIN—*Private Use—Concealment of Fact—Collateral Assault—Resolutions of City Council.*—The fact that condemnation proceedings were set on foot by resolutions of a city council is no reason why a judgment of condemnation obtained from the court by a fraudulent concealment of the fact that the land was not needed, or to be used for a public use, should not be collaterally assailed.

Appeal from a decree of the Law and Equity Court of the city of Richmond. Decree for defendant. Complainant appeals.

*Reversed.*

The opinion states the case.

*Wm. L. Royall,* for the appellant.

*Munford, Hunton, Williams & Anderson,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

The decree under review dismissed on demurrer a bill filed by the appellant, G. E. Justice, widow of W. M. Justice, deceased, to have assigned her dower in a certain island located in the waters of James river, in the city of Richmond, known as "Justis' Island," whereof her late husband had been seized in fee simple.

The material allegations of the bill are that the William R. Trigg Shipbuilding Company, a private corporation, undertook to acquire "Justis' Island" by purchase from W. M. Justis, for use in connection with its adjacent shipyard; that its efforts to purchase the island proving unsuccessful, it entered into an agreement with certain managing officers of the city of Richmond, to the effect following: That the city would condemn "Justis' Island" pretendedly, as necessary for the improvement of its harbor and when thus acquired would convey it to the Trigg Company in exchange for certain other property owned by that company, and which the city needed for its purposes, the company paying the agreed difference in values between the two properties in money; that in pursuance of this agreement the city council (well knowing that the island was not needed or to be condemned for the purposes stated in the ordinance, but was to be immediately conveyed to the Trigg Company in exchange for other property) passed an ordinance directing the city attorney to condemn the island for the alleged improvement of the harbor.

"Justis' Island" was condemned accordingly, and the contract between the Trigg Company and the city consummated by

the execution of mutual conveyances to the respective properties. The condemnation proceedings gave no intimation to the hustings court of the agreement between the Trigg Company and the city, but the record represented to the court that the property was being condemned for a public use, and the court ordered its condemnation on that theory. It is further alleged that the condemnation procedings were a fraud practiced upon the court.

The bill also alleges that the appellant was not a party to the condemnation proceedings, and had no knowledge of them until long after they were concluded; and that the appellee, the Georgia Industrial Realty Company, purchased the property in controversy with notice of the manner of its acquisition by the Trigg Company.

Taking as true, as we must do on demurrer, these properly pleaded allegations of the bill, we have the case of a municipal corporation, under the guise of acquiring private property for public use, in point of fact fraudulently procuring the condemnation of private property for private use. The question which confronts us, therefore, is shall a court of equity sanction a proceeding of this character upon the hypothesis that a judgment thus obtained is not amenable to collateral attack at the suit of the appellant, whose inchoate right of dower has since become consummate.

The decision of the trial court is placed upon the ground, "that Mr. Justis was the only necessary party interested in the condemnation proceedings had in the hustings court, except the city of Richmond, and that the decision of the hustings court upon all questions involved in that controversy is impregnable to collateral attack."

The conclusion of the learned court would unquestionably be sound in a lawful proceeding against the husband to condemn land in which the wife had an inchoate right of dower. In such case the wife, not being a necessary party under the statute, on the principle of representation, would be concluded, however

irregular the proceedings or erroneous the judgment might be. But the view taken by the lower court loses sight of the distinction between a judgment which is voidable simply by reason of error of judgment of the court which rendered it, upon matters within the pleadings and issues, and a judgment voidable for fraud practiced upon the court which rendered it, and which is extrinsic and collateral to any issue submitted to its determination. The judgment in the first instance can only be corrected by writ of error or other direct proceeding, but in the last it may be impeached collaterally. *Mahoney* v. *State Ins. Co.*, 133 Iowa, 570, 110 N. W. 1041, 9 L. R. A. (N. S.) 490.

That distinction seems to be clearly recognized by the authorities. For instance, if a court of general jurisdiction in condemnation proceedings, with the facts before it, erroneously appropriates private property for private use, that is an error of judgment for which its sentence may be reversed on writ of error. But if, on the other hand, the court be induced to render such judgment by the fraudulent concealment of the facts upon which it is founded, such judgment is liable to collateral impeachment.

In the case of *Norfolk & Western Ry. Co.* v. *Mills*, 91 Va. 613, 21 S. E. 556, in a concurring opinion at p. 641 of 91 Va., Keith, P., announces the general principle, that "there is no instrument so solemn, there is no judgment or decree so binding, but that if fraud in its procurement be alleged and proved, it ceases to protect the wrong-doer or to obstruct the injured in the assertion of their rights."

"Fraud will vitiate any, even the most solemn transaction, and an asserted title to property, founded upon it, is utterly void." *U. S.* v. *Libellants, &c.*, 15 Peters, 518, 594, 10 L. Ed. 826.

The rule with regard to the distinction between cases in which judgments may and those in which they may not be impeached collaterally for fraud is stated thus: "They may be impeached by facts involving fraud or collusion, but which

were not before the court or involved in the issue or matter upon which the judgment was rendered. They may not be impeached for any facts, whether involving fraud or collusion or not, or even perjury, which were necessarily before the court and passed upon." *The Acorn,* 1 Fed. Cas. No. 29, 2 Abb. 434. See also *Kansas City, &c. R. Co.* v. *Morgan,* 76 Fed. 429, 21 C. C. A. 468; *U. S.* v. *Chung Shee* (D. C.), 71 Fed. 277; *Amador C. & M. Co.* v. *Mitchell,* 59 Cal. 168; *Cotterell* v. *Koon,* 151 Ind. 182, 51 N. E. 235; *McCambridge* v. *Walraven,* 88 Md. 378, 41 Atl. 928; *Ward* v. *Southfield,* 102 N. Y. 287, 6 N. E. 660.

In the case of the *State of Michigan* v. *Phoenix Bank,* 33 N. Y. 9, the State of Michigan appointed a board of State officers to hear evidence and adjust a demand of the bank against the State. By fraudulent imposition on the board, the bank procured an award against the State for $35,000. In a suit by the State against the bank to recover the money paid on the award, the bank pleaded the finality of the award; but the court of appeals of New York was of opinion that the award stood on the same footing as the judgment of a court, and held that a judgment procured by fraud imposed upon the court which rendered it could be collaterally impeached on that ground. This case was approved in *Hackley* v. *Draper,* 60 N. Y. 92; *Ross* v. *Wood,* 70 N. Y. 11; and *Hunt* v. *Hunt,* 72 N. Y. 227, 28 Am. Rep. 129.

So, in the case of *Dunham* v. *Dunham,* 162 Ill. 589, 44 N. E. 841, 35 L. R. A. 70, the Supreme Court of Illinois disregarded a decree for divorce pronounced by a South Dakota court, because it had been procured by fraud practiced on the court. At page 80 of 35 L. R. A., the court observes: "But the court of South Dakota was not afforded an opportunity for the exercise of its discretion. By the concealment of appellant, the court had no knowledge that the very questions it was called upon to try in an *ex parte* proceeding were then at issue and pending in a prior suit in the State where both parties had been domiciled

and where both had appeared.   More than this, it was denied
the knowledge that the very facts upon which its jurisdiction
depended were then at issue in such prior suit.   While the
question is one not free from difficulty, we are of opinion that
appellant failed to act in good faith to the court in which her
suit was brought in South Dakota; that she was guilty of fraud
upon the court and upon the public in obtaining her decree;
and that it is therefore void."

So also, in the case of *Jackson* v. *Jackson,* 1 Johnson (N. Y.)
624, a married woman, herself and husband both being
domiciled in New York, went to Vermont and obtained a decree
for divorce and alimony, upon a ground for which she was not
entitled to a divorce by the laws of New York.   The Vermont
decree was made the basis of a suit against the husband in New
York to collect the amount allowed for alimony.   But the court
of the latter State held the decree void as having been recovered
*in fraudem legis.*   This case was approved in *Borden* v. *Fitch,*
15 Johnson (N. Y.) 146, 8 Am. Dec. 225.   See also *Caswell* v.
*Caswell,* 120 Ill. 377, 11 N. E. 343; *Schneider* v. *Sellers,* 25
Tex. Civ. App. 226, 61 S. W. 541, approved in *Schneider* v.
*Sellers,* 81 S. W. (Tex.) 126.

In response to the suggestion that courts may not inquire into
the motives of the city council in condemning the property in
controversy, being legislative in their character, the case of
*Nalle* v. *City of Austin,* 21 S. W. (Tex. Civ. App.) 375, is
directly in point.   In that case, certain citizens of the city of
Austin conceived the plan of building a sufficient dam across
the Colorado river to develop 14,000 horse-power.   They ac-
cordingly induced the city authorities to build the dam, with
the understanding that the city should have 2,000 horse-power
for lighting, heating and other municipal uses, leaving a surplus
of 12,000 horse-power to be sold by it for manufacturing pur-
poses.   The council accordingly passed an ordinance submitting
to the voters of the city a proposition to authorize them to issue
bonds of the city to the amount of $1,400,000 for the purpose,

as the ordinance declared, "of constructing a system of water works, and to furnish lights for the city and the citizens thereof." The court, at the suit of a citizen and tax-payer, enjoined the city from issuing the bonds, upon the ground that the charter only authorized it to produce enough water-power for the needs of the city, while the real purpose of the ordinance was to develop and sell horse-power in excess of its legitimate needs for private purposes.

To the same effect is the recent decision of this court in *Miller, Trustee,* v. *Town of Pulaski, ante,* p. 137, 63 S. E. 880, 2 Va. App. 829. The court there held, that "private property cannot be taken for a private use. The use which authorizes the legislature to grant to a corporation the power of eminent domain must be a public use; and the question whether or not in a particular case there is a public use is judicial and not legislative in its character, and is, therefore, one for the courts to determine. * * * A grant of power to a municipal corporation to condemn property for the purpose of supplying the inhabitants of the municipality with water and electric lights, would be a strictly public use; but if the purpose be to supply water and electric lights to persons other than the inhabitants of the town itself, the use is not a public one, and the grant of power is void."

We are of opinion that the decree of the Law and Equity Court of the city of Richmond, sustaining the demurrer to the plaintiff's amended bill and dismissing the same, is erroneous and must be reversed, and the case remanded for further proceedings.

*Reversed.*