Mary Audrey Bennett

*v.*

Kendall Leroy Bennett

(No. 10444)

Submitted April 16, 1952. Decided May 27, 1952.

Fox, JUDGE, not participating.

*Wolverton & Callaghan, Brooks B. Callaghan,* for appellant.

*Mahan, White & Higgins,* for appellee.

GIVEN, JUDGE:

Plaintiff, Mary Audrey Bennett, instituted this chancery cause, against Kendall Leroy Bennett, in the Circuit Court of Nicholas County, praying that a divorce decree granted to the defendant, in a prior chancery cause prosecuted in that court against her by Kendall Leroy Bennett, be set aside and held void, and for incidental relief. Defendant demurred to the bill of complaint and filed a plea

setting up the divorce decree entered in the former proceeding as constituting former adjudication of matters complained of in the instant proceeding. The circuit court overruled the demurrer, but in the decree overruling the demurrer made this proviso: "* * * provided, however, that upon any hearing herein that plaintiff must first show that she was a resident of Florida, was in Florida, and did not receive personal service of the summons in the divorce suit, and that she did not make personal appearance in defense of same, and did not authorize a general appearance; * * *". Under that ruling plaintiff was not permitted to introduce evidence as to any issue save those mentioned in the proviso of the decree. The circuit court, after having considered the evidence as to these issues, decided that plaintiff, by counsel, had made a general appearance in the first suit, that she was entitled to no relief, and dismissed her bill of complaint. From that decree this Court granted this appeal.

The parties were married in 1935 in Fayette County, West Virginia. Sometime after the marriage they purchased real estate at Beech Glen, in Nicholas County, taking title thereto jointly, where they resided until about December 29, 1948. On that date they executed a written agreement whereby they agreed to live separate and apart from each other, and further agreed to a settlement of property rights, the wife receiving four thousand dollars in cash and agreeing to convey her one half interest in the Beech Glen property to the husband. Certain personal property, including a joint bank account and bonds, the value of which is not disclosed, was turned over to the husband. The wife contends, and the husband denies, that a reconciliation was effected by the parties shortly after the making of the contract. The wife contends further that the four thousand dollars was returned by her to the "family funds" and used partly for living expenses, partly for the purchase of an automobile, title to which was taken in the husband's name, and partly in the purchase of real estate in Tampa, Florida, title to

which was also taken in the husband's name. The conveyance of the one half interest of the wife in the Beech Glen property was not executed by the wife. At the time of the separation no child had been born to the parties.

Sometime after the separation the parties went to Tennessee, where they lived in the home of a friend, the wife contending and the husband denying that they there cohabited as husband and wife. About the first of April, 1949, they went to Tampa, Florida, and on the fifth of that month purchased real estate at Tampa, taking title in the husband's name. The real estate purchased consisted of two dwellings and approximately an acre of land. One of the dwellings was occupied by one or both of the parties, certainly much of the time by both, until after the taking of the testimony in the instant proceeding, the wife contending and the husband denying that it was their true and permanent residence.

In December, 1949, the husband instituted a divorce proceeding in the Circuit Court of Nicholas County. Process was issued December 16, 1949, and served on the wife on December 19, 1949, by delivery of a copy thereof to a brother of the wife as "a member of the family of said Mary Audrey Bennett above the age of sixteen years and giving to the said Warren Hudson information of the purport of such copy, the said Mary Audrey Bennett not being found." The summons was served at 1628 Red Oak Street in Charleston, Kanawha County, West Virginia, the address having been designated in the praecipe. The summons was mailed to and received by the wife, then in Florida. After having instituted the suit the husband returned to Florida where, according to the allegations of the bill, the parties continued to reside and cohabit as husband and wife. That they did so cohabit seems clearly apparent, from the fact that the wife was delivered of a child on May 21, 1950. The bill alleges, and the wife testifies, that the defendant is the father of the child, and the defendant admits that he could be its father, though he expresses some doubt as to that fact. It will be noticed that the child was conceived subsequent to the time the

parties moved to Florida, but before the institution by the husband of the Nicholas County divorce suit.

A jurisdictional question which this Court is required to notice appears from the face of the record in the Nicholas County divorce suit. It is necessary, therefore, to state fully the one charge or ground upon which the divorce decree was sought and granted, cruel and inhuman treatment. The facts alleged as supporting such charge are to the effect: That the wife told the plaintiff about "embracing and kissing" a certain man; that she indicated in her conversations "that she may have had other improper relations with" that man; that after plaintiff returned from service in the United States Navy the wife "constantly quarreled and nagged at your plaintiff, complaining that he has not afforded the luxuries to which she was entitled"; that the wife "took off her wedding rings and went about in the society of young women and young men telling them that she was unmarried and behaved as such"; that the wife has indicated to the plaintiff that "she has no love or affection for him"; and that she does not desire to live with him. The bill alleges as a conclusion that the wife has been "guilty of extreme and repeated cruelty" and that such treatment has caused the plaintiff to suffer "at the defendant's hands * * * much nervous strain and worry * * * and his health and peace of mind have been seriously affected by the treatment accorded him * * *."

The evidence is just as void of any facts indicating or relating to acts of cruelty. The husband testified that on one occasion, when he put his arm around his wife, she "throwed it away; said, 'Don't bother me, I am busy.'"; that she appeared no longer to have any love or affection for him and did not care to cohabit with him; that a certain man had kissed her and asked her to have sexual intercourse with him, but that she denied kissing the man or having sexual intercourse with him; that her conduct toward plaintiff "was just like dry land—she didn't care to kiss me goodbye or meet me at the door or nothing else." He further stated that the wife informed him that

she went out with three girls and three boys on one occasion without her wedding rings because "it would look better on her part to go out without them than with them". To better illustrate the purport of the evidence, we quote the following question and answer: "Q. What I want to know here is what she has done to cause you to allege that she has been guilty of treating you with cruel and inhuman treatment? What are the facts, not conclusions? Just how has she done that? A. That is very hard to explain, but it is just like this, in her sneaking way of doing—she is one of these silent people. She don't tell nothing, but she thinks it out ahead of time, and then when the time comes you know about it then, but you didn't know about it before, such as she would tell people she would be at one place, she would come and see them on a certain day, and I would make my plans for that day maybe too, and when the day come she would say, 'Why, I thought I told you about that; I told you I was doing down there,' like that, and I wouldn't know a thing about it; my plans would be messed up and hers would too; so most of the time I would give in." Defendant further testified that he had been living under the same roof with the wife at Tampa, Florida, for several months; that he had there had sexual intercourse with her; that the child of which the wife was about to be delivered could be his.

The only other witness testifying on behalf of the plaintiff was his brother, Teddy Bennett. When asked to detail just how the wife treated plaintiff, he stated: "Well, this was taken a long time back. I have known of him coming in from work, cold, heating his own bath water, getting his own food to eat. She baked him no luxuries, as cake and pie. That is about all that I know." Upon being questioned further he stated that the wife showed no affection toward the plaintiff; that she "acted cold to him"; and that her attitude appeared to cause him to become "nervous". The special commissioner of the Circuit Court of Nicholas County, to whom the cause was referred, found that process was duly served on the wife; that plaintiff, at the time of the taking of the testimony, resided at

Tampa, Florida; that defendant was a resident of Kanawha County, West Virginia; that the wife had failed to make the conveyance of her one half interest in the Beech Glen property; that the parties last lived together as husband and wife in Nicholas County, and that no child had been born to the marriage. He also found that the charge of cruel and inhuman treatment had been established by the evidence and that the plaintiff was entitled to a divorce. On May 31, 1950, the circuit court confirmed the report, granted the divorce and ordered a conveyance by the wife of her one half interest in the Beech Glen property in accordance with the written agreement mentioned above. A special commissioner, in accordance with the provisions of the decree, later executed and delivered a deed conveying the one half interest to the husband.

After the entry of the divorce decree the husband returned to Tampa, Florida, and demanded that the wife vacate the property purchased by them and, on July 7, 1950, a little more than a month after the entry of the divorce decree, the wife instituted a proceeding in the Circuit Court of Hillsborough County, Florida, in which county the property purchased by the parties was situated. After having been served with notice of the institution of the proceeding, the husband appeared therein, moved to dismiss the proceeding and answered the allegations of the bill of complaint. Upon proper allegations, the bill prayed that the Nicholas County divorce decree be decreed void as having been obtained by fraud, and upon the ground that the West Virginia court did not have jurisdiction of the divorce proceeding there prosecuted. The last mentioned ground was founded upon allegations to the effect that the wife was not properly served with process in the suit, and that both parties were residents of Florida, and domiciled there, at the time of the institution of the suit, and continuously until after the entry of the divorce decree. The plaintiff also prayed that she be granted a divorce from defendant; that she be awarded custody of the child; for support and alimony, and for costs. The Florida court, upon evidence submitted

by each of the parties, found and held, in effect, that the parties were domiciled continuously in Florida from April, 1949, until after the institution of the Florida proceeding; that the divorce decree entered in the West Virginia court was void; that the wife be denied a divorce for the reason that the parties had cohabited together as husband and wife after the institution of the suit, and that the wife was entitled to the custody of the child, to support and maintenance, and costs. The amount of "child support and alimony" was fixed in the sum of twenty dollars weekly. The decree was entered October 10, 1950.

We find it unnecessary to consider the several questions raised as to the sufficiency of the service of process in the Nicholas County divorce suit, for we deem the finding of the circuit court to the effect that the wife authorized her attorney to make a general appearance in that proceeding, for the purpose of moving the court for a continuance, is based upon very substantial evidence. That an appearance by an attorney was made on her behalf, and that the attorney moved for a continuance, is clearly shown by the record in the original proceeding, made part of the record in the instant cause. The wife's contention that she did not authorize a continuance is not sustained. She admits that the attorney was employed by her in connection with the matters involved in the proceeding, but says that the employment was for the purpose of obtaining a delay in the hearing of the cause, out of court, through some arrangement with the attorney for the husband. The evidence of the attorney, and correspondence between the attorney and the wife, make it clear, as the lower court found, that the attorney was authorized by the wife to appear in the proceeding and to move for a continuance of the cause, as he did. An appearance in a proceeding by an attorney will be presumed to be by authority of the party he purports to represent. *Lawrence* v. *Gas Company*, 88 W. Va. 352, 106 S. E. 890; 2 M. J., Attorney and Client, Section 17. Neither is there merit in the wife's contention that the admission of the testimony given by the attorney, after the court

had overruled an objection thereto, violated the rule relating to privileged communications. The wife, by testifying as to whether she authorized the appearance, waived the privilege. *Moats* v. *Rymer*, 18 W. Va. 642, 41 Am. Rep. 703; 2 M. J., Attorney and Client, Section 37. The authorities clearly hold that a motion for a continuance constitutes a general appearance. "An appearance in a suit or action for any purpose other than to question the jurisdiction of the court, or to set up lack of process, or defective service thereof, is a general appearance. Point 1, syllabus, *Stone* v. *Rudolph*, 127 W. Va. 335, 32 S. E. 2d 742.

The power of the court, however, to enter a valid judgment does not depend alone upon jurisdiction of the parties. It must as well have jurisdiction of the subject matter. In 27 C. J. S., Divorce, Section 108, it is stated: "As a general rule, sometimes expressed in statutory enactments, the nature and circumstances of the offense relied on as a ground for divorce or separation should be specifically alleged, setting forth the time and place where it was committed with reasonable certainty, and, where plaintiffs' pleading fails to state a cause of action, the court acquires no jurisdiction and no authority exists for the issuance of a summons. * * *." In *Ward* v. *Ward*, 115 W. Va. 429, 176 S. E. 708, this Court held: "No valid divorce from the bond of matrimony can be decreed, on constructive service, by the courts of a state in which neither party is domiciled; and the recital in the proceedings of the facts necessary to show jurisdiction may be contradicted." In *Black* v. *Crouch*, 85 W. Va. 22, 100 S. E. 749, Point 3, syllabus, it is held: "A decree is to be interpreted in the light of the pleadings in the cause and, in so far as it purports to give relief beyond any foundation therefor laid in the pleadings, it is void." In *Jennings* v. *McDougle*, 83 W. Va. 186, 98 S. E. 162, Point 4, syllabus, it is held: "Where the jurisdiction of a court to grant a divorce depends upon the existence of certain facts, such facts must be pleaded, and, if not pleaded, the court has no right or power to proceed or act in the cause." In

*Waldron* v. *Harvey,* 54 W. Va. 608, 46 S. E. 603, 102 Am. St. Rep. 959, it is held: "Where there is no pleading to warrant a decree, or part of a decree, the decree, or such part of it, is not merely voidable, but void, as it is not on a matter in issue." In *Martin* v. *Kester,* 46 W. Va. 438, 33 S. E. 238, Point 3, syllabus, it is held: "No relief can be granted in equity without proper pleadings and prayer for same, and unless the proper parties are before the court." In *Coaldale Mining & Mfg. Co.* v. *Clark,* 43 W. Va. 84, 27 S. E. 294, Point 3, syllabus, it is held: "There can be no decree without allegations in the pleadings to support it." In 11 M. J., Jurisdiction, Section 8, it is stated: "To render a judgment or decree binding, the court rendering the same must have jurisdiction both of the parties and of the subject matter. The rendition of a judgment against a party not before the court in any way will be as utterly void as though the court had undertaken to act when the subject matter was not within its cognizance. This rule has reference to all courts, with this difference, that the jurisdiction of a superior court will be presumed until the contrary appears, whereas that of an inferior court must be shown." See *Selvy* v. *Selvy,* 115 W. Va. 338, 177 S. E. 437; *George* v. *Male,* 109 W. Va. 222, 153 S. E. 507; *Kesterson* v. *Brown,* 94 W. Va. 447, 119 S. E. 677; *Simmons* v. *Yoho,* 92 W. Va. 703, 115 S. E. 851; *Conrad* v. *Crouch,* 68 W. Va. 378, 69 S. E. 888; *Turner* v. *Stewart,* 51 W. Va. 493, 41 S. E. 924; *Miller* v. *Morrison,* 47 W. Va. 664, 35 S. E. 905; *Goff* v. *Price,* 42 W. Va. 384, 26 S. E. 287; *Vance Shoe Co.* v. *Haught,* 41 W. Va. 275, 23 S. E. 553. 1 Miller's Hogg's Equity Procedure, Section 576. 11 M. J., Judgments and Decrees, Sections 23, 24 and 25; 14 M. J., Pleading, Section 30.

Likewise the court has no power to decree a divorce where the record shows upon its face a complete absence of facts to support the charge. In addition to the authorities cited above, see *Wass* v. *Wass,* 41 W. Va. 126, 23 S. E. 537; *Sigmund* v. *Sigmund,* 251 N. Y. S. 267.

There are very strong reasons why a decree dissolving the marriage relationship between parties, without plead-

ings or evidence to support it, should be held void. The State, being always interested in the protection and preservation of that relationship, is, in effect, a party to each divorce proceeding. A divorce can not be obtained by default, agreement, connivance or collusion. It is the duty of courts to protect the interests of the State in any such proceeding. See *Smith* v. *Smith*, 116 W. Va. 271, 180 S. E. 185; *Wass* v. *Wass, supra.* In 27 C. J. S., Divorce, Section 104, it is stated: "Owing to the interest of the state and of society in divorce actions, generally speaking the rules governing pleadings in such cases differ from those usually applicable to the pleadings in an ordinary civil suit, although general chancery rules may be applicable to the pleadings in matrimonial suits in equity as well as other equity actions. Pleadings in such actions must be so framed as to entitle the pleader to the remedy he seeks, and accurate pleading should be demanded before the marriage relation is dissolved. * * *." In 2 Bishop on Marriage, Divorce and Separation, Section 157, it is stated: "* * * In all the region of the law, there is no such thing as a jurisdiction by reason of a control over both the parties, where there is none over the subject-matter. And the very objection on which the last three sections proceed, is that the court of the one State cannot determine the status of the person domiciled in the other, —the status being the subject-matter, and the lack of domicile being the jurisdictional defect. * * *."

Defendant argues that the divorce decree can not be attacked in this proceeding for the reason that the recitals in that decree constitute the matters involved *res judicata;* and that nothing on the face of the record shows lack of jurisdiction of the court as to the parties or as to the subject matter. He relies upon the cases of *Fink* v. *Fink,* 103 W. Va. 423, 137 S. E. 703; *Caswell* v. *Caswell,* 84 W. Va. 575, 100 S. E. 482; *C. & O. Railway Co.* v. *McDonald,* 65 W. Va. 201, 63 S. E. 968; *Smith* v. *Johnson,* 44 W. Va. 278, 29 S. E. 509; *Wandling* v. *Straw & Morton,* 25 W. Va. 692; *Hall* v. *Hall,* 12 W. Va. 1. But as pointed out above, the lack of jurisdiction of the trial court does

appear from the face of the record in the Nicholas County divorce suit. An examination of that record clearly discloses that the subject matter was not brought before the court. Although some of the broad language used in some of the cases relied upon by defendant, and perhaps others, apparently support his contention, when examined in the light of the facts in the instant cause, will, we believe, actually support the rules applied in the instant case. In the *Fink* case, the Court, in considering whether the wife could "complain collaterally" of a decree, stated: "* * * Of course, if the decree was void for lack of jurisdiction, she might perhaps do so; but the court was not without jurisdiction of the parties and the subject matter, though upon principles announced in the decisions relied on, it may have exceeded its jurisdiction or abused its discretion respecting dower and curtesy. * * *." In the *Caswell* case, the Court, at page 579 of the West Virginia Report, used this language: "This is a collateral attack upon the decree of the Oklahoma court, but the judgment or decree of a foreign court may be assailed collaterally for want of jurisdiction, as in such case the judgment is void, not simply voidable. If the certified record from the Oklahoma court shows want of jurisdiction, the first exception to the answer should have been sustained. *Roberts* v. *Hickory Camp Coal Co.*, 58 W. Va. 276." In the *McDonald* case the Court simply held that a judgment entered in an action would be a bar to a new proceeding in a court having concurrent original jurisdiction of the action. The holding in the *Smith* case was to the effect that a suit in equity could be maintained for the purpose of impeaching a judgment upon the ground that an appearance by an attorney was unauthorized, a matter not disclosed by the record. In the *Wandling* case, the judgment attacked was brought into an independent action instituted for recovery of a judgment, as a defense to the claim set up in the independent action. The Court held that the judgment could not be collaterally attacked on the ground that the court had no jurisdiction, unless the want of jurisdiction appeared upon the face of the record. That does not mean, of course, that a proper proceeding could not have been

instituted for the purpose of impeaching the judgment, as was done in the instant cause. The holding in the *Hall* case clearly implies that a judgment may be attacked, even collaterally, for lack of jurisdiction. Point 1 of the syllabus is in this language: "Where a judgment or decree of a court of general civil jurisdiction is offered in evidence collaterally in another suit its validity cannot be questioned, for errors which do not affect the jurisdiction of the court."

In the light of these authorities, as applied to the facts in the Nicholas County Circuit Court divorce proceeding, we hold that the facts alleged as constituting cruel and inhuman treatment are insufficient to constitute any charge entitling the husband to a divorce, and that the court was, therefore, without jurisdiction to enter a divorce decree. To hold otherwise would not only violate the rule recognized by the above authorities, but would permit the pleader to determine what facts actually constitute cruel treatment in any particular case. Opportunity for fraud on the court would be wide open, and the parties by agreement, connivance or collusion could, and in many cases undoubtedly would, obtain a divorce decree where no true ground for divorce existed. The State would no longer be in position to protect its interest in the marriage and family relationship. It may be well to note, however, that the rule applied here has no application to a pleading which states a good cause for divorce, but merely states it imperfectly. See *Jarrell* v. *Coal and Land Co.,* 75 W. Va. 752, 84 S. E. 933, L. R. A. 1916E, 312; *Mullins* v. *Coal and Land Co.,* 75 W. Va. 783, 84 S. E. 937. A full discussion of the nature of the facts necessary to constitute cruel treatment, within the meaning of our divorce statute, may be found in the opinion in *Davis* v. *Davis,* decided this term, 137 W. Va. 213, 70 S. E. 2d 889.

In 11 M. J., Judgments and Decrees, Section 145, it is stated:

"As mentioned previously, a void judgment is no judgment at all, but a mere nullity and may be assailed in any court, anywhere, whenever any claim is made or

rights asserted under it. It neither binds nor bars anyone, and all proceedings under it are ineffectual to confer title, or afford protection to anyone. And no act of ratification can impart vitality to it. Its payment may be resisted by other creditors interested in the fund sought to be subjected, and who would be prejudiced thereby.

"If the judgment is null, no action, on the part of the plaintiff, no inaction upon the part of the defendant, and no resulting equity in the hands of third persons, can invest it with any of the elements of power or vitality. A void judgment may be attacked either directly or collaterally. * * *." Statements to the same effect will be found in 49 C. J. S., Judgments, Section 421, and in 31 Am. Jur., Judgments, Sections 597 and 604. See also Code, 48-2-11; *Stephenson* v. *Ashburn,* decided this term, 137 W. Va. 141, 70 S. E. 2d 585; *Cable* v. *Cable,* 132 W. Va. 620, 53 S. E. 2d 637.

Further contentions are made to the effect that the divorce decree entered in the Circuit Court of Nicholas County is void for the reasons that both spouses were residents of and domiciled in Florida for a period beginning before the institution of that suit and continued to be domiciled there until after the entry of the decree; that they last cohabited as husband and wife in Florida; and that the divorce decree was obtained by fraud. We think it unnecessary to now consider the merits of these questions, in so far as they relate to that part of the decree granting the divorce, since that part of the decree has been held to be void for another reason. See Code, 48-2-8; 2 Bishop on Marriage, Divorce and Separations, Sections 47, 50, 549.

That part of the decree based upon the allegations of the prayer of the bill relating to the property settlement agreement must be considered from a different angle. The allegations and proof support the decree as it relates thereto. The wife having made a general appearance in the cause, is bound thereby unless there be found fraud in the procurement of the decree. No charge of fraud was made or indicated in the original proceeding, the wife

having appeared therein for the sole purpose of moving for a continuance of the hearing. In the present proceeding the bill of complaint alleges, upon certain facts going to the jurisdiction of the court, that the prior proceeding was void because of fraud. No proof of fraud, however, was permitted by the court. It is contended that since the wife made a general appearance in the divorce proceeding, she is now bound by all matters which were or could have been litigated therein. In 49 C. J. S., Judgments, Section 434, it is stated: "A judgment may be collaterally attacked on the ground of fraud where the fraud goes to the jurisdiction of the court." In Point 1, syllabus, *Turner* v. *Stewart,* 51 W. Va. 493, 41 S. E. 924, it is held: "A judgment or decree for a debt in favor of A against B is conclusive, both between the parties and as to strangers, of the existence, justness, and amount of the debt, and can be impeached by a party or a stranger only for fraud or collusion. It can be impeached therefor, not collaterally, but only by a direct proceeding, to set it aside by original bill or cross bill or answer." In *Hall* v. *McGregor,* 65 W. Va. 74, 64 S. E. 736, Point 4, syllabus, it is held: "A judgment cannot be assailed in equity upon pleadings which fail to show affirmatively some reason, founded in fraud, surprise, accident, mistake, or adventitious circumstance beyond the control of the party complaining, why the defense was not made at law." To the same effect are *Wyatt* v. *Wyatt,* 79 W. Va. 708, 92 S. E. 117; *Plant* v. *Humphries,* 66 W. Va. 88, 66 S. E. 94, 26 L. R. A. (N. S.) 558; *First National Bank* v. *Distilling Co.,* 41 W. Va. 530, 23 S. E. 792, 56 Am. St. Rep. 878; and *Justis* v. *Realty Co.,* 109 Va. 366, 63 S. E. 1084. In 11 M. J., Judgments and Decrees, Section 143, it is stated:

"Fraud in the procurement of a decree may be attacked at any time, if there has been diligence in discovering it and promptness in proceeding to attack it, notwithstanding the expiration of a day to show cause against the decree. So if it is alleged and proved that a judgment or decree was procured by fraud, it ceases to protect the wrongdoer, or to obstruct the injured party in the assertion of his rights. * * *.

"The rule with regard to the distinction between cases in which judgments may and those in which they may not be impeached collaterally for fraud is stated thus: 'They may be impeached by facts involving fraud or collusion, but which were not before the court or involved in the issue or matter upon which the judgment was rendered. They may not be impeached for any facts, whether involving fraud or collusion or not, or even perjury, which were necessarily before the court and passed upon.' There is a distinction between a judgment which is voidable simply by reason of an error of judgment of the court which rendered it, upon matters within the pleadings and issues, and a judgment voidable for fraud practiced upon the court which rendered it, and which is extrinsic and collateral to any issue submitted to its determination. The judgment in the first instance can only be corrected by a writ of error or other direct proceeding, but in the last it may be impeached collaterally." These authorities, we believe, make it clear that the wife is entitled to have the court in the instant proceeding determine the issues arising upon the allegations of fraud contained in her bill of complaint, as they relate to the property settlement and, if fraud be found, the decree relating thereto be decreed null.

The conclusions reached herein make it unnecessary for the Court to consider, in this opinion, the contentions of the wife relating to the action of the trial court in overruling the demurrer to the bill of complaint upon certain conditions hereinabove set out.

Remaining for consideration are the contentions of the parties as to whether the circuit court, in the instant proceeding, erred in failing to give full faith and credit to the decree of the Florida court, as that decree relates to support and alimony for the wife and child. That decree ordered that the husband "pay to the plaintiff child support and alimony in the sum of $20.00 weekly; * * *", and that "defendant, Kendall Leroy Bennett, pay to Raymond Sheldon, attorney of record for the plaintiff, the sum of $250.00 attorney's fees and that defendant pay all

the costs incurred in this proceeding in the sum of $14.35."
With reference to such payments, the bill in the instant
cause alleges that the husband owes unto the wife "her
attorney fees in her Florida divorce suit in the amount
of $250.00 * * * and alimony and support money for her-
self and child in the amount of $20.00 a week, all of which
is due, owing and unpaid and which is in the total sum
of $500.00, which plaintiff is entitled to and prays for a
decretal judgment of this court against the said defend-
ant * * *."

We find no conflict between the Nicholas County Circuit
Court decree and the Florida circuit court decree, as they
relate to support of the child. The Florida court found and
held, as it had the right to do, that both parties were domi-
ciled in Florida, within the jurisdiction of the particular
court granting the decree, at the time of the institution of
the suit there. Very substantial evidence supports that
finding. Since the divorce decree entered by the Nicholas
County Circuit Court is void, there can be no question that
the parties remain husband and wife, as the Florida court
found and decreed. In these circumstances, it clearly
appears that the decree for support and alimony entered
by the Florida court is entitled to full faith and credit
in the West Virginia courts. Questions as to the applica-
tion of the full faith and credit clause, especially as that
clause applies to matters of divorce and support and
maintenance decrees, are amply discussed in *Sutton* v.
*Sutton,* 128 W. Va. 290, 36 S. E. 2d 608; *State* v. *Goudy,* 94
W. Va. 542, 119 S. E. 685; *Estin* v. *Estin,* 334 U. S. 541, 68
S. Ct. 1213, 92 L. ed. 1561, 1 A. L. R. 2d 1212; *Sherrer* v.
*Sherrer,* 334 U. S. 343, 68 S. Ct. 1087, 92 L. ed. 1055, 1 A.
L. R. (2d) 1355; *Coe* v. *Coe,* 334 U. S. 378, 68 S. Ct. 1094,
92 L. ed. 1064, 1 A. L. R. (2d) 1376; *Williams* v. *State of
North Carolina,* 325 U. S. 226, 65 S. Ct. 1092, 89 L. ed. 1577,
157 A. L. R. 1366; 37 American Bar Association Journal 1
(January, 1951).

In view of the conclusions reached herein, the final
decree of the Circuit Court of Nicholas County entered
in the instant proceeding is reversed; the decree of that

court entered on the 31st day of May, 1950, in the chancery cause of Kendall Leroy Bennett, plaintiff, against Mary Audrey Bennett, defendant, in so far as it grants a divorce to Kendall Leroy Bennett, is adjudged void; and this cause is remanded to the Circuit Court of Nicholas County for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*